CHICAGO WELFARE RIGHTS ORGANIZATION *et al.*, Plaintiffs-Appellees, *v.* EDWARD T. WEAVER, Successor to HAROLD O. SWANK, Director, Illinois Department of Public Aid *et al.*, Defendants-Appellants.

(No. 56573; )

First District—April 19, 1972.

*Rehearing denied May 26, 1972.*

William J. Scott, Attorney General, of Chicago, (Francis T. Crowe and Donald S. Carnow, Assistant Attorneys General, of counsel,) for appellants.

Michael F. Lefkow, James O. Latturner, and Joyce A. Edelman, all of Community Legal Counsel, of Chicago, for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This class action was brought in the Circuit Court of Cook County by plaintiff welfare families under 42 U.S.C. 1983 for declaratory judgment, injunctive and other relief to implement 42 U.S.C. § 602(a)(23) [402 (a)(23) of the Social Security Act], a 1968 amendment to the Social Security Act which provided a cost-of-living adjustment effective July 1, 1969, for recipients of Aid to Families with Dependent Children (AFDC). Release of benefits alleged to be wrongfully withheld by defendants was also sought. On August 30, 1971, the court entered a decree awarding the plaintiff class retroactive AFDC payments. Defendants appeal from that portion of the judgment. The decree also provided that the adjustment of the Illinois Department of Public Aid's (IDPA) shelter maximum from $90 to $97 was correct rather than the increase of $90 to $100 asked for by the plaintiffs. The plaintiffs cross appeal from this portion of the judgment.

The State of Illinois is voluntarily taking part in the AFDC program of the Social Security Act, 42 U.S.C. § 601 *et seq.* On September 1, 1963, Illinois established a $90 per month maximum on the shelter allowance any recipient could receive. (Section 202.7, Chapter 23, Illinois Revised Statutes, 1963.) On January 2, 1968, Congress enacted § 402(a)(23):

"[B]y July 1, 1969, the amounts used by the State to determine the

needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximum that the State imposes on the amount paid to families will have been proportionately adjusted."

An HEW interpretation of 45 CFR § 233.20(a)(2)(ii), which refers to § 402(a)(23), states:

" 'By July 1, 1969' means the required updating will have been completed and all AFDC assistance payments will have been recomputed in accordance with revised amounts, and, if applicable, adjusted maximums and ratable reductions.

\* \* \*

'Reflect fully changes in living costs since such amounts were established' means that the State agency must identify when the amounts to determine need were last priced. A cost study of the AFDC amounts should have been completed between January 2, 1968, and July 1, 1969, and the changes in living costs from the date the amounts were last priced should have been determined.

\* \* \*

Acceptable cost study methods

*Method B* [Used by the IDPA in this case]

a. Using the U.S. Department of Labor, Bureau of Labor Statistics, Consumer Price Index, for the appropriate region determine the current index price for the applicable items of living;

b. Calculate percentage change for the items in the index from the date the standard was last established to the present date; \* \* \*

'Will have been adjusted' means the amounts used by the State agency to determine need will have been corrected to reflect the changes in costs of living, since the amounts were last established. This adjustment in assistance standards must be made, even though other provisions regarding payment may offset it.

Adjustment amounts and costs study must bear a reasonable time relationship between cost study and the application into agency regulations. A cost study in early 1968 which was reflected in the agency's standard effective July 1, 1968, meets the requirements of the Act. However, if the agency did not adjust its standards until July 1, 1969, the cost study in early 1968 would not be acceptable; a more current study is needed."

On May 29, 1969, the Illinois Department of Public Aid submitted to the Department of Health, Education, and Welfare (HEW) a report indicating that the revision of the shelter standard and allowance was "in process," and that the change would be in effect on July 1, 1969. Compliance, however, was delayed for a full year.

Harold Swank, Director of the IDPA, initially proposed to comply by adopting a graduated scale of shelter standards and maximums for families of five persons or more, but leave the $90 standard and allowance for families of four or less untouched. He also suggested increasing the number of exceptions to the maximum which already existed by 2000. HEW objected that this did not conform to the regulations. Mr. Swank replied that he considered Illinois to be in conformity with the regulations and stated:

"In Cook County and the outlying communities referred to above, the need for rentals over the $90 maximum has been recognized by the Public Aid Code since 1963. The number of exceptions authorized has gradually been increased, whenever the need for same has occurred to a total of 1,575 in August 1969 (1250 for Cook County and 325 for downstate). The actual number of exceptions used in September 1969 was 1,210 in Cook County and 273 downstate. Although this kind of up-dating by exceptions as the need occurs may not be considered ideal, it is practical in view of the circumstances and I believe that it does meet the Federal requirements."

HEW again rejected this proposal, and on April 22, 1970, Swank advised HEW of his proposal to bring IDPA into "technical conformity" by adjusting:

"the State's maximum from $90 to $95, by reflecting the 5.9 percent increase in the rental component of the Bureau of Labor Statistics Consumer Price Index for the Chicago area from July 1, 1967, to January 1, 1970. The last action by the General Assembly relative to rent standards was with the enactment of the Illinois Public Aid Code in July 1967 at which time $90 was established as the maximum."

HEW accepted the resulting $5.00 increase in the maximum, but on July 13, 1970, the plaintiff Chicago Welfare Rights Organization wrote a letter to HEW alleging that the calculation for adjustment had been based on a period with an incorrect base. By letters of August 6, 1970, and August 18, 1970, HEW advised Swank that September 1, 1963, and not July 1, 1967, was the correct base date. In the August 18th letter Edmund J. Siemicki, Deputy Regional Commissioner, Social and Rehabilitation Service, stated:

"Secondly, it is clear that the period September 1, 1963, to July 1, 1969, would be acceptable measuring period:

'U.S. Department of Labor, Bureau of Labor Statistics, rent index for September 1963 was 105.1. The same index for July 1969 was 113.4. This represents an 8% increase in the rent index from September 1963 to July 1969.

Thus, the Illinois shelter maximum should have been increased from

$90 to $97 (assuming that the State agency would round amounts under $.50 to the nearest dollar and amounts of $.50 and over to the next highest dollar. The correct measuring period is September 1, 1963 to July 1, 1969 (as provided in Section 402(a)(23) of the Act.'"

On August 27, 1970, Swank issued Official Bulletin 70.49 making an adjustment to $97. The plaintiffs assert that a terminal date of July 1, 1970, should be used because that is when the adjustment was first made. During the period from July 1, 1969, to July 1, 1970, shelter costs increased 3% representing an additional $3.00 a recipient must pay to obtain shelter. As a result, they assert the maximum should be raised to $100. On oral argument counsel for the plaintiffs estimated the cost of the arrearage to be $100,000, while the Attorney General said the cost would be sereval times that and there is no legislative appropriation for the money in the years past or at present.

Plaintiff families are all dependent upon the Illinois and Cook County Department of Public Aid, and they allege they all have actual shelter costs in excess of the shelter allowance they have been receiving from the IDPA.

There are several issues presented on appeal. The only one we need consider is jurisdiction, that is, whether the award of retroactive benefits by the Circuit Court of Cook County violates Section 26 of Article IV of the Illinois Constitution of 1870. That section provides:

"The State of Illinois shall never be made defendant in any court of law or equity."

The Supreme Court of Illinois explained the prohibition against making the State a party defendant in a law suit in *Monroe v. Collins* (1946), 393 Ill. 553:

"The constitutional provision which prohibits the State from being a party in suits at law or equity is in aid of the State's sovereignty. In *In re City of Mt. Vernon*, 147 Ill. 359, we quoted from *Haus v. Louisiana*, 134 U.S. 1, with approval as follows: 'It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission.' And further, 'The obligations of a State rest for their performance upon its honor and good faith, and cannot be made the subjects of judicial cognizance, unless the State consents to be sued or comes itself into court."

■■ The plaintiffs argue that the immunity of the State from suit does not extend to a State officer when he is enforcing an unconstitutional statute or is proceeding in violation of law. In *Schwing v. Miles* (1937), 367 Ill. 436, the court said:

"It is established that a suit against the department is a suit against the

State * * * and will not lie. On the other hand, where the action at law or suit in equity is maintained against a State officer or the director of a department on the ground that, while claiming to act for the State, he violates or invades the personal and property rights of the plaintiff under an unconstitutional act, or under an assumption of authority which he does not have, such suit is not against the State."

But this general rule must now be interpreted to be modified by the rule of *Edelen v. Hogsett* (1969), 44 Ill.2d 215, when the suit involves money damages. In *Edelen,* the court made clear that Section 26 has been modified by the General Assembly in the form of the Court of Claims Act. Section 439, Chapter 37 of the Illinois Revised Statutes. That act provided for the Court of Claims to have exclusive jurisdiction of certain causes of action. Section 8 is pertinent to this litigation:

"The court shall have exclusive jurisdiction to hear and determine the following matters:

(a) All claims against the State founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency, * * *."

The reason for this exclusive jurisdiction is, as explained in *Edelen,* to provide for the expeditious centralized handling of the numerous claims against the State. Also in *Edelen,* the court noted:

"As we have heretofore pointed out, appellants filed this action in the circuit court, and insofar as is disclosed by the allegations in the complaint, made no effort whatsoever to seek remedy against the State in the Court of Claims. Under such circumstances, it cannot be said that they are persons aggrieved by the prohibition of suits against the State embodied in the Illinois constitution as modified by the establishment of the Court of Claims."

■■ In the case at bar we hold that the plaintiffs should have brought their suit in the Court of Claims to provide for the orderly disbursement of State funds if their suit were found to have merit.

■■ The plaintiffs contend this case should be decided under the Illinois Constitution of 1970, but the result would be no different. The new constitution specifically delegates to the legislature the function of prescribing the manner and form in which the State is to be sued. Section 4 of Article XIII of the Constitution of 1970 provides:

"Except as the General Assembly may provide by law, sovereign immunity in this State is abolished."

The Illinois Legislature responded by enacting Public Act 77-953, approved August 17, 1971, and effective that date, which reenacted the Court of Claims Act.

For the above reasons, we find the Circuit Court was without jurisdiction to hear this case. The decree is reversed and the cause is dismissed.

Decree reversed and cause dismissed.

BURMAN and ADESKO, JJ., concur.