(No. 45253.— ▮▮▮▮▮▮)

CHICAGO WELFARE RIGHTS ORGANIZATION *et al.,* Appellants, v. EDWARD T. WEAVER *et al.,* Appellees.

*Opinion filed Sept. 25, 1973.—Rehearing denied Nov. 28, 1973.*

Michael F. Lefkow, of Woodlawn Neighborhood Legal Services, and James O. Latturner, of Uptown Neighborhood Legal Services, both of Chicago, for appellants.

William J. Scott, Attorney General, of Springfield (Donald S. Carnow, Special Assistant Attorney General, of counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case is here on leave granted to appeal from a judgment of the Appellate Court, First District (5 Ill. App. 3d 655), which reversed a judgment of the circuit court of Cook County. The substantive issue in the case concerned the correctness of the determination of the Director of the Department of Public Aid as to the maximum shelter allowance payable under the program of Aid to Families with Dependent Children (AFDC). The circuit court ruled that the Director had ultimately determined the maximum shelter allowance correctly, but that he had unlawfully delayed in doing so. The court therefore ordered the defendants, the Director, the Auditor of Public Accounts, and the State Treasurer, to pay to recipients under the program the benefits which would have been payable but for the Director's unlawful delay in increasing the maximum allowance. Both the defendants and the plaintiffs appealed. The appellate court reversed the judgment and dismissed the cause, on the ground that the circuit court lacked jurisdiction because "the plaintiffs should have brought their suit in the Court of Claims." (5 Ill. App. 3d 655, 660 (1972).) For the reasons stated below, we affirm.

In, order to understand the problems presented, an

explanation of the Federal and State statutory schemes is necessary. The Social Security Act established the Aid to Families with Dependent Children program. Section 401 of that statute provides: "The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary [of the Department of Health, Education, and Welfare], State plans for aid and services to needy families with children." (42 U.S.C. sec. 601.) Section 402 states the elements necessary to qualify a plan for Federal funding and directs the Secretary to approve any plan which fulfills those conditions. (42 U.S.C. sec. 602.) Illinois has adopted a plan for which it receives Federal payments under this statute. Ill. Rev. Stat. 1969, ch. 23, par. 4—1 *et seq.*

In 1968 Congress added the following new requirement, hereafter referred to as section 402(a)(23):

> "*** that by July 1, 1969, the amounts used by the State to determine the needs of individuals will have been adjusted to reflect fully changes in living costs since such amounts were established, and any maximums that the State imposes on the amount of aid paid to families will have been proportionately adjusted." Pub. L. 90—248, sec. 213(b), 81 Stat. 898; 42 U.S.C. sec. 602(a)(23).

The Illinois statute authorizes the Department to:

> "Establish standards by which need for public aid will be determined and amend such standards from time to time as circumstances may require." Ill. Rev. Stat. 1969, ch. 23, par. 12—4.11.

The statute continues:

> "The standards shall provide a livelihood compatible with health and well-being for persons eligible for financial aid under any Article of this Code. They shall include recognition of any special needs ***.
>
> The quantity and quality of the items included in the standards established for food, clothing, and other basic maintenance needs shall take account of the buying and consumption patterns of self-supporting persons and families of low income, as determined from time to time by the United States Department of Agriculture, the United States Bureau of Labor Statistics, and other

nationally recognized research authorities in the fields of nutrition and family living.

The items in the standards shall be priced periodically for changes in cost, as provided in Section 12—4.15, and allowances adjusted as indicated by the findings of such surveys. ***

In establishing a standard for shelter, the Department shall take in account in each community the prevailing rates or costs for housing of low income persons and the factors which influence the level of such rates or charges. However, the shelter standard for any recipient, exclusive of household furnishings and utilities, shall not exceed $90 per month, except for adjustments made in the manner authorized by Section 12—14." Ill. Rev. Stat. 1969, ch. 23, par. 12—4.11.

The Illinois statute thus provides separately for various expenses, and requires periodic adjustment in the allowance for some items to reflect increases in the cost of living. (*Cf.* Ill. Rev. Stat. 1969, ch. 23, par. 4—2.) Apparently the requirement of section 402(a)(23) was met as to those items, and they are not involved in this lawsuit. The problem centers upon the statutory maximum of $90 for shelter allowance.

The Illinois statute authorizes adjustments in the $90 maximum "in the manner authorized by Section 12—14." That section provides for a "Legislative Advisory Committee on Public Aid" to be composed of six members of the House of Representatives and six members of the Senate, and further provides:

"When limitations are imposed by this Code or by any other law on grants to recipients of public aid, the Illinois Department may authorize deviations from such limitations only after prior notice to and consultation with the Committee. If two-thirds of the membership of the Committee determine as a matter of policy that deviations from such limitations should or should not be made, the Illinois Department shall give substantial consideration to such determination." Ill. Rev. Stat. 1969, ch. 23, par. 12—14.

Of course the $90 maximum could have been adjusted by

amending the statute, but the legislature did not do so before the July 1, 1969, deadline set by section 402(a)(23) and has not yet done so.

Despite the statutory maximum, many Illinois AFDC families received more than $90 per month for shelter because the Department of Public Aid, acting pursuant to section 12—14, had from time to time established a specific number of authorized "exceptions." At all times the number of authorized "exceptions" substantially exceeded the number of recipients who needed more than $90. *Cf. Metcalf v. Swank,* 293 F. Supp. 268 (N.D. Ill. 1968), 305 F. Supp. 785 (N.D. Ill. 1969), *aff'd,* 444 F.2d 1353 (7th Cir. 1971), *vacated and remanded,* 406 U.S. 914, 32 L. Ed. 2d 113, 92 S. Ct. 1778, (1972).

The Illinois Department contended that this administrative practice constituted compliance with section 402(a)(23). The Federal Department of Health, Education, and Welfare (HEW) rejected this contention. Considerable correspondence and negotiation followed. In May of 1970, following a meeting with the Legislative Advisory Committee, the Illinois Department of Public Aid (IDPA) announced its intention to increase the maximum shelter allowance to $95 to take account of increased costs during the period from July 1967 to January 1970. This increase became effective July 1, 1970. In July, 1970, the Chicago Welfare Rights Organization, a plaintiff in this case, wrote to HEW alleging, in part, that the increase was improperly computed. On August 18, 1970, HEW notified the Illinois Department that the adjustment must reflect changes in costs since August, 1963, when the $90 maximum was enacted by the legislature, and that "the period September 1, 1963, to July 1, 1969 would be [an] acceptable measuring period." On August 22, 1970, this action was filed. On August 27, 1970, the Illinois Department increased the shelter allowance maximum to $97.

It is against this statutory and administrative background that the procedural issues with which we shall be

primarily concerned arise. Three of the plaintiffs, Ernestine Hollins, Doris Johnson, and Alberta Lee, are mothers of dependent children who sue on their own behalf and on behalf of other individuals similarly situated. Each of them was required to, and did, pay shelter rent in excess of $90. The plaintiff, Chicago Welfare Rights Organization, is described as "an unincorporated association of some 20 welfare rights organizations in the Chicago area representing approximately 3000 families receiving public assistance benefits." The plaintiff, Southside Concerned Subsidized Parents, is described as "an unincorporated association of some 300 families living on the south side of Chicago who receive public assistance benefits."

In view of the disposition that we make of these cases, we find it unnecessary to consider the standing of these two organizations to maintain this action. The three individual plaintiffs assert their own rights and those of the members of a class whom they purport to represent, and they are proper parties. The primary relief that they seek is a mandatory injunction to compel the defendants to pay to the plaintiffs the amounts to which they claim to be entitled, as well as money judgments for any amounts that had been improperly withheld or denied. The appellate court centered its attention upon the latter claim, and held that it could be asserted only in the Court of Claims. In our opinion the appropriate focus is upon the failure of the plaintiffs to invoke the administrative remedies available to them.

Although section 12—4.11 states a fixed maximum shelter rent allowance, it also authorizes shelter allowances in excess of that maximum by way of administrative adjustments. The Department has consistently exercised its authority to make administrative changes in individual shelter rent allowances, and it has by administrative action increased the maximum applicable to all cases beyond the $90 limit still stated in the statute.

Section 11—8.7 provides that judicial review of administrative decisions of the Department shall be gov-

erned by the Administrative Review Act. (Ill. Rev. Stat. 1969, ch. 23, par. 11—8.7.) The Administrative Review Act provides:

> "This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed ***." Ill. Rev. Stat. 1969, ch. 110, par. 265.

We see nothing in the facts of this case that would justify a disregard of this plain provision. If this action can be maintained in the face of the statutory prohibition, it is difficult to conceive of any area in which the Administrative Review Act can operate. *Cf. People ex rel. Chicago and North Western Ry. Co. v. Hulman*, 31 Ill.2d 166 (1964); *Johnson v. Ogilvie*, 47 Ill.2d 506 (1970).

Our conclusion is not altered by the circumstance that the plaintiffs stated their claim in two counts, one based upon the State law and the other upon the Federal Civil Rights Act of 1871 (42 U.S.C. sec. 1983). Both counts alleged the same facts and sought the same relief. It has been held that there is no requirement that administrative remedies be exhausted when a State welfare plan is challenged under section 1983 in a Federal court. (*Carter v. Stanton*, 405 U.S. 669, 31 L. Ed. 2d 569, 92 S. Ct. 1232 (1972); *Damico v. California*, 389 U.S. 416, 19 L. Ed. 2d 647, 88 S. Ct. 526 (1967).) In *Damico* the United States Supreme Court stated:

> "The three-judge District Court dismissed the complaint solely because 'it appear[ed] to the Court that all of the plaintiffs [had] failed to exhaust adequate administrative remedies.' This was error. In *McNeese v. Board of Education*, 373 U.S. 668, noting that one of the purposes underlying the Civil Rights Act was 'to provide a remedy in the federal courts supplementary to any remedy any State might have,' *id.*, at 672, we

held 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy,' *id.,* at 671. See *Monroe v. Pape,* 365 U.S. 167, 180-183." 389 U.S. at 416-17, 19 L. Ed. 2d at 648.

The fact that a Federal district court would take jurisdiction of an action of this kind neither requires nor justifies the courts of this State in doing so. The Supreme Court of the United States said in *Rosado v. Wyman,* 397 U.S. 397, 422, 25 L. Ed. 2d 442, 461, 90 S. Ct. 1207 (1970):

"While we view with concern the escalating involvement of federal courts in this highly complicated area of welfare benefits, one that should be formally placed under the supervision of HEW, at least in the first instance, we find not the slightest indication that Congress meant to deprive federal courts of their traditional jurisdiction to hear and decide federal questions in this field."

The situation is not the same insofar as Illinois courts are concerned. The governing statute provides for administrative review at the instance of individual applicants or recipients, and it provides that administrative decisions shall be judicially reviewable under the Administrative Review Act. Illinois provided a remedy for the grievances that the plaintiffs assert, but they did not choose to pursue it.

In our opinion the fact that the General Assembly had made available an administrative remedy, followed by judicial review, negatives the conclusion of the appellate court that the plaintiffs' only remedy was by a proceeding in the Court of Claims.

For the reasons stated in this opinion, the judgment of the appellate court dismissing the action is affirmed.

*Judgment affirmed.*