PEGGY BALLEW et al., Plaintiffs-Appellants, v. JOEL EDELMAN et al., Defendants-Appellees.—RUDOLPH REHAK et al., Plaintiffs-Appellants, v. THE DEPARTMENT OF PUBLIC AID et al., Defendants-Appellees.—ILLINOIS WELFARE RIGHTS ORGANIZATION et al., Plaintiffs-Appellants, v. THE DEPARTMENT OF PUBLIC AID et al., Defendants-Appellees.—DOROTHY CURRIE et al., Plaintiffs-Appellants, v. JOEL EDELMAN et al., Defendants-Appellees.

(No. 60392;

First District (1st Division)—December 1, 1975.

Lorelei Borland, Joan Humphrey, and Sheldon Roodman, all of Legal Assistance Foundation, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago (Michael B. Weinstein, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The issues presented here were raised by four separate class suits, consolidated in the trial court. Defendants filed motions to dismiss which were allowed in due course. Plaintiffs have appealed.

■■ The well-pleaded facts in the allegations of the complaints are accepted as true so that we are concerned only with issues of law presented by the pleadings. (*Fancil v. Q.S.E. Foods, Inc.*, 60 Ill.2d 552, 554, 328 N.E.2d 538.) The four complaints were filed by varying groups of plaintiffs. We will identify them if required by the names of the first named plaintiff in each of the cases: Peggy Ballew; Rudolph Rehak; Illinois Welfare Rights Organization, an unincorporated association, and Dorothy Currie acting individually and on behalf of her minor children. There are a number of named plaintiffs in each case. In these four pleadings, they seek to represent the entire class of all similarly situated recipients of public assistance in Cook County primarily under articles III and IV of the Illinois Public Aid Code. (Ill. Rev. Stat. 1973, ch. 23, par. 1—1 and following.) No point is raised on the propriety of class representation.

All members of the classes will be referred to collectively as plaintiffs. The complaint of plaintiff Ballew is concerned with persons receiving public aid for utility services for heating, cooking, etc.; that of plaintiff Rehak is concerned with food allowances under the Code; that of plaintiff Illinois Welfare Rights Organization is concerned with clothing allow-

ances and that of plaintiff Currie is concerned with payments for personal essentials and household supplies. The defendants are Joel Edelman, Acting Director of the Illinois Department of Public Aid; the Illinois Department of Public Aid; David Daniel, Director of the Cook County Department of Public Aid and the Cook County Department of Public Aid.

The four separate complaints are quite similar. It is alleged that the allowances made to the various plaintiffs and the members of the respective classes which they represent are presently inadequate to defray the cost of the type of services for which welfare allowances are received. Each complaint points out that the Public Aid Code places upon the Illinois Department of Public Aid the duty of establishing standards by which need for public aid will be determined and the further duty of amending "such standards from time to time as circumstances may require." (Ill. Rev. Stat. 1973, ch. 23, par. 12—4.11.) This same section of the statute provides that the quantity and quality of items included in the various standards such as for food, clothing and other basic maintenance needs "shall take account of the buying and consumption patterns of self-supporting persons and families of low income as determined from time to time by the United States Department of Agriculture, the United States Bureau of Labor Statistics, and other nationally recognized research authorities in the fields of nutrition and family living." In addition, "[t]he items in the standards shall be priced periodically for changes in cost * * * and allowances adjusted as indicated by the findings of such surveys." The County Department of Public Aid is required by the statute to administer public aid in cities of more than 500,000 inhabitants, "subject to the supervision and direction of the Illinois Department." Ill. Rev. Stat. 1973, ch. 23, par. 12—18.5.

The individual complaints state the various standards currently used to compute public assistance grants and allege that in each instance the standards are substantially below the amounts which public aid recipients must pay for the services or articles in question. Thus, the complaints allege that the defendants have failed to establish standards which would provide plaintiffs and the persons they represent with a livelihood compatible with health and well-being. It is alleged that the Illinois Department has failed to amend the various standards. For example, the utility standards have not been amended since October, 1967, and food standards have not been amended since 1958, although the quantities of certain items required for adequate nutrition were increased by the United States Department of Agriculture in 1964. There was a downward revision of the food standards in 1963, despite an increase in the cost of food in Illinois of approximately 48% between 1958 and 1972. The standards for clothing have not been amended for over 10 years.

The complaint of plaintiff Peggy Ballew prays that the court declare that defendants have failed to amend the utility standards in violation of law and that the present standards fail to meet the requirements of law; for a permanent injunction restraining the defendants from failing to amend the utility standards and ordering defendants to submit an amended standard to the court for approval. Each of the three remaining complaints contains a prayer for similar relief.

The motions to dismiss filed by the defendants to each of the complaints aver that the court lacks jurisdiction over defendants by virtue of the doctrine of sovereign immunity; the Court of Claims of Illinois has exclusive jurisdiction over the controversy and the court lacks jurisdiction under the constitutional doctrine of separation of powers. The parties filed memoranda of law with the trial court.

In this court, all of plaintiffs have joined, contending that each of the complaints states a good cause of action for declaratory and equitable relief; the doctrine of sovereign immunity is inapplicable to the case at bar and the causes of action for declaratory and equitable relief are not within the jurisdiction of the Court of Claims; decision of the cause on its merits will not invade the prerogative of the executive or legislative branches of the government and the Administrative Review Act is not applicable to the claims raised by plaintiffs. In response, defendants urge that the issues in this case have become moot because of the adoption of the "flat grant" welfare system and assumption by the Federal government of the program of aid to the aged, blind and disabled; the present action is actually against the State of Illinois and is therefore barred by sovereign immunity so that the proper forum is the Court of Claims and the judicial remedy sought by plaintiffs would violate the constitutional doctrine of separation of powers; plaintiffs have failed to exhaust their administrative remedies; plaintiffs seek inappropriate relief and the question of whether the complaints state good causes of action is not presently before the court.

In our view, the only contentions presented by the briefs which we need consider or decide are whether the action is presently moot and whether it was properly commenced in the circuit court or should have been initiated as an administrative proceeding before the Illinois Department of Public Aid. Defendants urge in their brief that the case is moot because on October 1, 1973, the State of Illinois adopted a Consolidated Standards Plan, generally referred to as the "flat grant" system, to be used in administering article IV of the Public Aid Code. (Ill. Rev. Stat. 1971, ch. 23, par. 4—1 and following.) This was accomplished by an amendment to section 12—4.11 of the Public Aid Code. (Ill. Rev. Stat. 1973, ch. 23, par. 12—4.11.) In their reply brief, plaintiffs urge that implementation of the flat grant or Consolidated Standards Plan did not

eradicate the individual standards and did not eliminate the duty of the Department of Public Aid with reference to periodical pricing of items in the standards and with reference to amendment of the "standards from time to time as circumstances may require" so that the case is not moot. (Ill. Rev. Stat. 1973, ch. 23, par. 12—4.11.) Neither side cited any decisive authority on this issue.

While this opinion was in the final stages of preparation, the case of *Thurman v. Department of Public Aid*, 25 Ill.App.3d 367, 323 N.E.2d 502, *leave to appeal denied*, 58 Ill.2d 599, was brought to the attention of this court. In *Thurman*, as in the case at bar, plaintiffs challenged standards applied and allowances granted by the Department of Public Aid on the basis of the statutes above described. They did so by administrative proceedings before the Department. Plaintiffs sought an increase in public assistance allowances. After an adverse administrative ruling, plaintiffs continued with administrative review and attempted to proceed upon a class action basis. The trial court held that adoption of the flat grant welfare policy on October 1, 1973, rendered the action moot. The court did so on the basis of information which it had acquired in hearing another case then pending in the circuit court. This court affirmed this result on the ground that the trial court properly took judicial notice of the situation with particular reference to the fact that under the new standard 76% to 80% of welfare recipients have had a definite increase in allotments.

■■ Since we were unaware of *Thurman* at the time of oral argument, we thought it best to obtain written expressions from counsel in the case before us as to its applicability. Counsel for defendants took the position that *Thurman* is directly applicable here because of the large number of public aid recipients here represented who have already received increases; and, therefore, that plaintiffs have obtained all of the relief that they sought in their complaints.[1] On the contrary, counsel for plaintiffs insist that *Thurman* has no application here. They first urge that this point was not raised by defendants in the trial court. It is correct that the point of mootness was not raised in any of the motions to dismiss filed by defendants. However, all of these motions were filed prior to October 1, 1973, when the events upon which the mootness contention is based occurred. Mootness often occurs during the pendency of litigation and is then properly brought to the attention of the reviewing court. (See *Wheeler v. Aetna Casualty & Surety Co.*, 57 Ill.2d 184, 189, 311 N.E.2d 134.) Plaintiffs also urge that the record before us does

---

[1] Each of the consolidated causes before us was filed prior to institution of the flat grant system, on varying days from February 20, 1973, to June 1, 1973.

not present facts upon which we can dismiss the causes as moot. A number of factors impel us to adopt the view urged by plaintiffs.

We are not certain that the facts upon which mootness would be based properly appear in the record before us. Pursuant to a question put by this court on oral argument, counsel for plaintiffs furnished this court and counsel for defendants with a memorandum prepared by the Illinois Department of Public Aid, Bureau of Research and Statistics. In this document the statement is made that the flat grant allowance plan did not "throw out" the long-standing cost standards of the Department but averaged them according to 1971 expenditure levels. If so, the basic demand by plaintiffs that we require the Department of Public Aid to consider additional amendment of the standards remains unanswered by the claim of mootness.

■■ We do not know if the trial court or this court in *Thurman* gave consideration to this statement by the Department of Public Aid regarding the effect of the flat grant system. However, as this court pointed out in *Thurman*, judicial notice may be taken of published reports and public records of the Department. (25 Ill.App.3d 367, 370.) In addition, in *Thurman*, plaintiffs attempted to obtain an increase of welfare payments. In the case before us, as we will shortly show, plaintiffs distinguish between standards and payments of aid and assert that their interest lies only in the former. In *Thurman*, this court proceeded on the basis that "plaintiffs have secured what they basically sought." (25 Ill.App.3d 367, 370.) This language from *Thurman* is not applicable here in view of the apparent difference in the relief sought. There, plaintiffs sought welfare increases. Here, plaintiffs seek amendment of standards. In addition, we note in the petition for rehearing filed before this court in *Thurman* that counsel for plaintiffs there asserted that the amounts of the grants have not been increased to reflect corresponding increases in the cost of living.

■■ These matters have raised doubts in our mind concerning application of the doctrine of mootness. We do not have before us definite information upon which to base the conclusion that the case is moot. These facts, if they existed, could readily have been brought to our attention by a proper motion to dismiss supported by affidavits. See Supreme Court Rule 361(a), Ill. Rev. Stat. 1973, ch. 110A, par. 361(a).

Finally, the classic Illinois decision on mootness (*People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769, *cert. denied*, 344 U.S. 824, 97 L.Ed. 642, 73 S.Ct. 24) has itself established an important exception to the general rule that a case which has become moot will be dismissed on appeal. In *Labrenz*, the court stated the exception (411 Ill. 618, 622):

> "But when the issue presented is of substantial public interest, a well-recognized exception exists to the general rule that a case

which has become moot will be dismissed upon appeal. (See cases collected in 132 A.L.R. 1185.) Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question."

■■ In our opinion, the case before us comes within the well-recognized exception. We have here an important question of substantial public interest. Many thousands of citizens of this city and State are directly affected by this subject matter and all citizens should be interested in proper solution of any problem involving public aid. Also, it is important that an authoritative determination of the remaining issue here presented concerning correct procedure be made through proper legal channels for the future guidance of public officers as well as welfare recipients and their counsel. Accordingly we reject the contention that the case has become moot and we will proceed to consideration of the remaining and decisive issue as to whether administrative proceedings are a prerequisite to invoking the jurisdiction of this court.

An examination of the precise nature of the relief sought by plaintiffs next requires attention. Plaintiffs make a distinction between standards by which the need for public aid will be determined and financial aid that will actually be paid. In other words, the standard is simply a measuring stick which is to be established by an examination of official statistics and other facts relating to the cost of living and other pertinent factors so that interested persons, including recipients, will be informed regarding the basic facts. On the other hand, "financial aid" has reference to the money actually paid to, or for the benefit of, the recipient. Clearly the standard is a guide to the amount of financial aid but the terms are not synonymous. In Illinois the duty to establish and amend the standards appears in section 12—4.11 of the Public Aid Code as above set forth. In contrast, financial aid is defined in section 2—6 of the Code as "a money or vendor payment to or in behalf of a recipient for basic maintenance support or medical assistance * * *." Ill. Rev. Stat. 1973, ch. 23, par. 2—6.

This distinction between standards and financial aid was noted in *Rosado v. Wyman*, 397 U.S. 397, 408, 25 L.Ed.2d 442, 453, 90 S.Ct. 1207, where the Court described the two separate and "basic factors" in determining what benefits are to be paid as follows:

"First, it is necessary to establish a 'standard of need,' a yardstick for measuring who is eligible for public assistance. Second, it must

be decided how much assistance will be given, that is, what 'level of benefits' will be paid."

Consequently, the claims of plaintiffs here are not money demands which can be satisfied by the entry of a judgment for the payment of money. The pertinent issue arises from the alleged failure of the Illinois Department of Public Aid to amend the standards by which eligibility to receive financial aid is to be determined in accordance with the statute. As shown, the statute provides that the standards are to be established by the Department to provide a livelihood compatible with health and well-being for persons eligible to receive financial aid, taking into account buying and consumption patterns of self-supporting persons and families of low income as determined by the United States Department of Agriculture, the Bureau of Labor Statistics and other nationally recognized research authorities in nutrition and family living, including the statutory duty of amending these standards "from time to time as circumstances may require." (Ill. Rev. Stat. 1973, ch. 23, par. 12—4.11.) The issue is whether this court has jurisdiction in a proceeding of the type before us, a class action also seeking mandamus and declaratory aid, to direct the defendants to proceed with consideration of amendment of the standards in accordance with the various prayers for relief requested by plaintiffs. This problem is not susceptible of solution by simple application of the distinction above made between standards and payments. In our opinion, we may readily learn the correct answer from the recent decisions of the Supreme Court of Illinois in *Chicago Welfare Rights Organization v. Weaver*, 56 Ill.2d 33, 305 N.E.2d 140, *cert. denied* 417 U.S. 962, 41 L.Ed.2d 1135, 94 S.Ct. 3164 and *People ex rel. Naughton v. Swank*, 58 Ill.2d 95, 317 N.E.2d 499.

In *Chicago Welfare Rights Organization*, one of the same plaintiffs involved in the case before us brought a class action in the circuit court for declaratory judgment and injunctive relief. The Director of the Illinois Department of Public Aid had increased the maximum shelter allowance to be payable as Aid to Families with Dependent Children (AFDC). The Director also fixed the date upon which this maximum was to become effective. Plaintiffs sought retroactive payment commencing with an earlier date. This was done by the proceedings in the circuit court and no prior action was taken before any administrative tribunal. The trial court entered a decree awarding retroactive payments to the class represented by plaintiffs.

■■ On appeal, this court reversed the judgment upon the theory that plaintiffs should have brought their suit in the Court of Claims to provide for orderly disbursement of State funds. (5 Ill.App.3d 655, 284 N.E.2d

20.) The Supreme Court of Illinois reached the same result but proceeded upon an entirely different theory. The Supreme Court pointed out the strong language in the Administrative Review Act creating an exclusive method of judicial review of all final decisions of administrative agencies, where the provisions of the Act are adopted by the statute creating the agency, and held that no other mode of review may be employed. (See Ill. Rev. Stat. 1969, ch. 110, par. 265; also Ill. Rev. Stat. 1973, ch. 23, par. 11—8.7.) As stated by the court, there was nothing in the facts of the case "that would justify a disregard of this plain provision." (56 Ill.2d 33, 39.) The court also pointed out "that the General Assembly had made available an administrative remedy, followed by judicial review * * *." (56 Ill.2d 33, 40.) This pronouncement is completely applicable to the case at bar. This ruling that it was legally essential for plaintiffs to invoke their administrative remedy prior to filing suit, is applicable to the situation before us.

Thereafter, in *Naughton*, a person with four children had applied for aid for these dependent minors. This application was duly processed and granted but no payment was made to the recipient for the period from the date of application to the date of determination of eligibility. The applicant appealed and, at a hearing before an officer of the Department of Public Aid, she challenged the validity of a regulation in the Public Aid Manual which provided that assistance could be awarded only prospectively from the date of determination of eligibility. The hearing officer recommended denial of retroactive payment and the Director of the Department approved. The recipient then filed a complaint under the Administrative Review Act in the circuit court and the record of the administrative proceeding was filed. Thereafter additional parties were joined in the cause and an amended complaint was filed. Count I sought relief under the Administrative Review Act, repeating the allegations of the original complaint. Count II sought mandamus directing a retroactive award of assistance. Count III was a class action charging that the regulations which prescribed only prospective payments of benefits were contrary to the statutes of Illinois and the United States as well as to the Constitution of the United States. This count prayed declaratory relief. In due course, the circuit court entered judgment on Count I, based on the Administrative Review Act, granting retroactive payment to the date of the application and remanding the case to the Department of Public Aid for such action. No appeal was taken from this judgment. However, the trial court dismissed Counts II and III of the amended complaint.

On appeal to this court, the order of dismissal was reversed and the cause remanded with directions to proceed with a determination of the merits of the controversy as expressed in Counts II and III. (12 Ill.App. 3d 43, 297 N.E.2d 784.) In essence, this court held that public assistance

applicants are not prevented from initially seeking a judicial ruling on the constitutionality or validity of the rules of the Department prior to availing themselves of provided administrative relief. The court held that the language used in section 1 of the Administrative Review Act, "involved in a proceeding before the agency * * *" should be construed as limited to pending proceedings only and advanced various reasons for this conclusion. 12 Ill.App.3d 43, 46, 47.

The Supreme Court reversed the decision of this court and affirmed the judgment of the circuit court which had dismissed Counts II and III. The Court cited *Chicago Welfare Rights Organization*, with approval and quoted therefrom. The Supreme Court pointed out that the holding of this court would have permitted applicants for public aid to disregard the statutory provisions for appeal and review within the Department and also would have permitted applicants to review administrative determination of the Department by any form of action that they chose, in spite of the provisions of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 265) and those of the Public Aid Code (Ill. Rev. Stat. 1973, ch. 23, par. 11—8.7) which are the identical statutes involved in the case before us. The opinion of the Supreme Court thus requires initial recourse to administrative remedies by plaintiffs here, with subsequent judicial proceedings by way of administrative review.

In our opinion, these two decisions by the Supreme Court of Illinois are decisive of the case before us. They effectively refute plaintiffs' contention that they "are raising an issue for which there is no administrative remedy." The legislature has specifically delegated to the Illinois Department of Public Aid complete power to establish and amend the standards. (Ill. Rev. Stat. 1973, ch. 23, par. 10—3.) Plaintiffs here have failed to afford the administrative agency any opportunity to discharge the responsibility thus exclusively devolved upon it. Plaintiffs have attempted to circumvent this legal prerequisite. They have totally ignored the administrative remedy provided by law. The contention of plaintiffs that requiring them now to seek recourse by initial administrative action would drive them to an exercise in futility is thus unpersuasive.

We cannot decide this case simply upon the basis of the dire need which the applicants may have for additional assistance or for an augmentation of the standards. We are obliged to apply clear principles of law as above analyzed and to conclude that it is legally essential for plaintiffs in this cause initially to file proceedings before the Illinois Department of Public Aid.

The order appealed from was legally proper and it is affirmed.

Judgment affirmed.

BURKE, P. J., and SIMON, J., concur.