LEONARD N. FOSTER, Individually and as Representative of a Class, Plaintiff-Appellant, *v.* ROBERT ALLPHIN *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 62963

Opinion filed September 28, 1976.

Jerome Marvin Kaplan, of Chicago (Leonard N. Foster, *pro se*, and Ronald S. Ladden, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Ann Sheldon, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Leonard Foster, filed a three-count complaint in chancery on behalf of himself both individually and as representative of a class of persons or entities similarly situated. Joined as party defendants to this action were Robert Allphin, both individually and as Director of the Department of Revenue of the State of Illinois; Robert Batch, both individually and as Superintendent of the Illinois State Lottery Division of the Department of Revenue; and the Lottery Control Board of the Lottery Division of the Department of Revenue. Defendants responded to plaintiff's complaint by filing a motion to strike the complaint and dismiss the action. Plaintiff then filed a petition for a mandatory injunction and also an answer to defendants' motion. Thereafter, arguments of counsel were entertained by the circuit court, and defendants' motion to strike and dismiss the complaint was granted. This appeal was perfected after plaintiff's motion to vacate the order of dismissal was denied.

This controversy pertains specifically to one game, the "Grand Slam" game, and also to other games in general which were conducted pursuant to the Illinois Lottery Law. (Ill. Rev. Stat. 1975, ch. 120, par. 1151 *et seq.*) In the complaint, the class was defined as "all persons or other entities who purchased Illinois State Lottery Tickets or Illinois State Grand Slam Lottery Tickets, which tickets in either category were purchased by plaintiff or members of the plaintiff class in weeks when the winning tickets were in fact not sold." It was alleged that defendants conducted an advertising campaign whereby they represented to the public that weekly drawings would be held and that corresponding prizes would be awarded to the holders of tickets bearing the winning numbers. In reliance upon these representations, members of the plaintiff class purchased lottery tickets. It was further alleged that, for some weekly drawings and specifically for all drawings in the "Grand Slam" game, the group of tickets from which the winning tickets were drawn consisted of both those tickets which had been sold and also those tickets which had not been sold. On those occasions when the winning ticket drawn had been unsold, no prize was awarded for that scheduled drawing. In particular, the complaint alleged that on April 4, 1975, the three winning tickets drawn representing three $100,000 prizes in the Grand Slam game had been unsold. Since no additional winning tickets were drawn, the three $100,000 prizes were unclaimed. It was alleged that, in those instances where the winning tickets were unsold resulting in no prize being awarded, defendants failed to award prizes in accordance with the published schedules of prize drawings relied upon by the members of the plaintiff class when they purchased lottery tickets. Plaintiff concedes that as an individual ticket holder he received exactly what he bargained for—

a chance of winning the prize. But plaintiff maintains that the plaintiff class was misled by defendants to believe that one member of the plaintiff class would win each prize as determined at each scheduled drawing.

By the first two counts of his complaint, plaintiff prayed for a mandatory injunction and for the issuance of a writ of mandamus respectively. Under both counts, plaintiff requested that the prize money for winning tickets which were unsold be retained by the State Lottery Superintendent until additional winning tickets could be drawn that had in fact been sold. Plaintiff asserts that defendants are able to make a determination as to whether any given ticket has been sold based upon computerized data collected by defendants. Among other relief prayed for by plaintiff under these two counts was that the procedures for conducting subsequent lottery games be modified to assure that only tickets which had been sold would be eligible for each drawing.

In Count III, plaintiff prayed for an adjudication of unjust enrichment on the part of defendants. Plaintiff requested that a constructive trust be established for all revenues received by defendants from the sale of lottery tickets during weeks in which the winning tickets drawn were unsold so that these monies so derived could be refunded to members of the plaintiff class.

In the motion to strike and dismiss the complaint, defendants asserted, *inter alia*, that the circuit court lacked jurisdiction to consider plaintiff's complaint since the Lottery Act granted primary jurisdiction to entertain and determine such matters to the Illinois Department of Revenue and the Lottery Control Board (Ill. Rev. Stat. 1975, ch. 120, par. 1157.3), with the resultant administrative decisions subject to judicial review pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1975, ch. 120, par. 1175.) Among other reasons cited by defendants for which plaintiff's complaint should be dismissed were that the complaint was legally insufficient to support the action, that all lottery games in question were conducted in accordance with the Lottery Act, that plaintiff lacked standing to maintain the instant action, and that the instant controversy was not an appropriate subject for a class action suit.

After hearing arguments of counsel, the circuit court dismissed the complaint with prejudice and found no just reason for delaying an appeal from the dismissal order.

On appeal, plaintiff defines the issue presented for review as follows:
"The issue is whether the trial court ruled correctly in holding certain rules established by the defendants to be conclusive in determining plaintiff's rights as to how defendants should conduct the Illinois State Lottery."

Defendants in their brief enumerate the following two issues:

1. Whether defendants' offer to hold lottery drawings requires them to draw numbers until a winner is found.

2. Whether the court lacks jurisdiction because the plaintiff failed to exhaust his administrative remedies.

We consider plaintiff's failure to pursue and exhaust the administrative remedies available to him to be dispositive of this appeal. The provisions of the Illinois Lottery Law extend broad powers to the Lottery Control Board. Included in this grant of authority is the power to promulgate rules and regulations governing matters such as the manner of selecting winning tickets; to conduct hearings upon complaints charging violations of the Act or regulations thereunder, or on any other matter as provided by Board rule; to engage in a continuous investigation of the lottery system so that any defects or abuses in the system can be detected and rectified; and to report to specified leaders of the executive and the legislative branches any matters requiring change in order to correct undesirable conditons in connection with the administration and operation of the lottery. (Ill. Rev. Stat. 1975, ch. 120, pars. 1157.1 through 1157.6.) The act further provides that any party adversely affected by a final order or determination of the Lottery Control Board or the Department of Revenue may obtain judicial review pursuant to the Administrative Review Act. (Ill. Rev. Stat. 1975, ch. 120, par. 1175.) The Administrative Review Act provides:

> "This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act. In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not be employed * * *. Ill. Rev. Stat. 1975, ch. 110, par. 265.

In the instant case, plaintiff completely ignored the administrative remedy made available by the General Assembly. If, after pursuing that remedy, plaintiff was still without the relief which he deemed was warranted under the circumstances, he was entitled to have the administrative decision judicially reviewed pursuant to the Administrative Review Act. Instead, plaintiff proceeded directly to the circuit court when he filed this class action. We find nothing in the facts of this case which would justify a disregard of the provisions set out above of the Illinois Lottery Law and the Administrative Review Act. (See *Chicago Welfare Rights Organization v. Weaver* (1973), 56 Ill. 2d 33, 305 N.E.2d 140.) Hence, the circuit court correctly dismissed this action as it lacked jurisdiction to consider the matter.

Plaintiff argues that to ask the Lottery Control Board to examine the propriety of its own rules would constitute a useless act. This argument

is without merit. The success of a game such as the Illinois lottery is dependent in large part upon favorable public sentiment. During the brief history of the Illinois lottery, it has become apparent that many individuals are willing to purchase lottery tickets and confront overwhelming odds against the chance of their tickets being drawn as winning tickets, with the understanding that they will realize a handsome return on their investment in the event they are holding a winning ticket. Confidence in the game is mandatory. If it were revealed that the game was being conducted unfairly, a marked decrease in ticket sales could be anticipated. Thus, the Lottery Control Board and the Department of Revenue should be concerned about whether the game is being administered and operated in a desirable fashion. As pointed out by plaintiff, allegations similar to those made in the instant case were disclosed to the public in another jurisdiction. In that jurisdiction, public response was so adamant in opposition to the manner in which the lottery was allegedly being conducted that the game was suspended for a period of time in an attempt to rectify the problem and to restore public confidence. Certainly the Lottery Control Board in this State would seek to avert a similar situation from occurring. The General Assembly has extended the requisite authority to the Board to conduct inquiries and to recommend or implement changes in the manner in which the lottery system is conducted so that continued public enthusiasm and participation in the games would not be impaired. In summation, we conclude that not only was plaintiff required to pursue and to exhaust his administrative remedies with regard to his complaint, but plaintiff could have pursued that remedy with greater optimism than his brief would suggest.

For the foregoing reasons, the judgment of the circuit court dismissing this action is affirmed.

Judgment affirmed.

HAYES and DOWNING, JJ., concur.