Mabel VICKERS et al.,
Plaintiffs-Appellants,

v.

James L. TRAINOR, Director, Illinois
Department of Public Aid,
Defendant-Appellee.

No. 76–1796.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 19, 1976.

Decided Dec. 10, 1976.

Frank S. Bloch, Richard F. Zehnle, Chicago, Ill., for plaintiffs-appellants.

William A. Wenzel, Sp. Asst. Atty. Gen., William J. Scott, Atty. Gen., Chicago, Ill., for defendant-appellee.

Before CLARK, Associate Justice (Retired),* FAIRCHILD, Chief Judge, and PELL, Circuit Judge.

PELL, Circuit Judge.

This is an appeal from district court orders denying plaintiffs' motion for class certification and staying the federal action pending the outcome of state court proceedings which the district court directed the parties to bring. Our jurisdiction to entertain an appeal from the stay order arises under 28 U.S.C. § 1291, as interpreted in *Drexler v. Southwest DuBois School Corporation*, 504 F.2d 836 (7th Cir. 1974) (en banc).

The named plaintiffs[1] brought this suit to challenge regulations of the Illinois Department of Public Aid (IDPA) which provide that chore and housekeeper services are available only to recipients of Aid to Families with Dependent Children (AFDC), Supplemental Security Income (SSI), or Illinois' State Supplement Program (SSP). The chore and housekeeper services are provided by the IDPA as part of a federal-state social services program pursuant to Title XX of the Social Security Act, 42 U.S.C. § 1397 et seq.

Chore and housekeeping services include arrangement for and/or provision of household tasks, essential shopping, simple household repairs, and other light work for persons who, because of illness or incapacity, would be unable to remain in their own homes without those services. It has been stipulated by the parties that the named plaintiffs need such services because severe physical disabilities make it impossible for them to care for themselves in their own homes. Because the plaintiffs are not receiving assistance under AFDC, SSI, or SSP, they are not eligible for the needed services under the eligibility standards promulgated in the "State of Illinois Comprehensive Annual Services Plan for Program Year October 1, 1975–June 30, 1977," which was adopted on October 1, 1975.

The plaintiffs filed their complaints setting out five distinct causes of action on December 8, 1975. The first claim charged that IDPA had violated 45 C.F.R. § 228.-34(d)[2] by giving no explanation of the restriction of chore and housekeeping services to AFDC, SSI or SSP recipients and by giving no indication that any public comment was received relative to the change in eligibility standards.[3] The second claim

---

* The Honorable Tom C. Clark, Associate Justice (Retired), of the Supreme Court of the United States, is sitting by designation.

1. In our review of the stay order of June 24, 1976, we shall treat the case as brought solely on behalf of the named plaintiffs. *See Williams v. American Airlines, Inc.*, 526 F.2d 757, 762 (7th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); *Case & Company, Inc. v. Board of Trade of City of Chicago*, 523 F.2d 355, 360 (7th Cir. 1975). *See also Lagorio v. Board of Trade of City of Chicago*, 529 F.2d 1290, 1291 (7th Cir. 1976), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3171, 49 L.Ed.2d 1187 (1976).

2. 45 C.F.R. § 228.34(d), in pertinent part, states: "The final services plan must include an explanation of differences between the proposed and final services plan and the reasons therefor, including a summary of the public comments."

3. IDPA's "Proposed Comprehensive Annual Services Plan For Illinois," filed on July 1, 1975, appears as an exhibit in the record. The proposed plan provided eligibility for chore and housekeeping services for "Income-Eligible[s]" as well as AFDC, SSI and/or SSP recipients. Under the "Income Eligible" category, the income limit for a single individual was $363.00 per month, and for a family of three, $828.00 per month. Under those income limitations,

charged that IDPA's exclusion of persons such as the named plaintiffs who needed housekeeper services but had insufficient funds to pay for them violated Title XX of the Social Security Act by reason of its failure to distribute the social services in a manner which was both equitable and consistent with the objective of providing a given service to the maximum number of persons in the State who were in need thereof. The third claim charged that the IDPA regulations excluding from consideration any needs for housekeeper services in determining financial eligibility for AFDC and SSP violated the requirements of Title XX. The fourth claim charged that the IDPA regulations concerning eligibility for AFDC and SSP restricted eligibility for those programs and for chore and housekeeping services contrary to the Illinois Public Aid Code, specifically Ill.Rev.Stat. 1975, ch. 23, § 12–4.11.[4] The fifth, and last,

the stipulated facts make clear that the named plaintiffs would have qualified for chore and housekeeping services.

4. This statutory section appears in the article of the Public Aid Code entitled "Administration," and it sets forth the powers and duties of IDPA regarding the standards of assistance, their content and limitations, as follows:

Establish standards by which need for public aid will be determined and amend such standards from time to time as circumstances may require.

The standards shall provide a livelihood compatible with health and well-being for persons eligible for financial aid under any Article of this Code. They shall include recognition of any special needs, such as assistance in shopping, guide service, or similar special requirements occasioned by the handicaps and infirmities of age, blindness, or disability. To permit the maintenance at home of ill or disabled persons who would otherwise require removal to a nursing, sheltered care, or boarding facility, the standards shall include provision for home-delivered meals, home nursing care, and housekeeping assistance to the extent that the cost of such home services together with other maintenance expenses of the person is reasonably related to standards established for care in a group facility appropriate to the person's condition. Standards established to determine the eligibility of medically indigent persons for aid under Articles V or VIII shall take into account the requirements of the spouse or other dependent or dependents of the applicant for medical aid.

The quantity and quality of the items included in the standards established for food, clothing, and other basic maintenance needs shall take account of the buying and consumption patterns of self-supporting persons and families of low income, as determined from time to time by the United States Department of Agriculture, the United States Bureau of Labor Statistics, and other nationally recognized research authorities in the fields of nutrition and family living.

The items in the standards shall be priced periodically for changes in cost, as provided in Section 12–4.15, and allowances adjusted as indicated by the findings of such surveys. Aid payments shall not be reduced except for changes in (1) cost of items included in the standards, or (2) the expenses of the recipient, or (3) the income or resources available to the recipient, or (4) grants resulting from adoption of a consolidated standard.

In establishing a standard for shelter, the Department shall take in account in each community the prevailing rates or costs for housing of low income persons and the factors which influence the level of such rates or charges. However, the shelter standard for any case, exclusive of household furnishings and utilities, shall not exceed $97 per month, except for adjustments made in the manner authorized by Section 12–14. If recipients can obtain adequate shelter only if a security deposit is given the landlord, the Department may furnish one month's rent as a security deposit. This provision shall be operative only to the extent that it does not foster the granting of duplicate assistance.

In fixing standards to govern payments or reimbursements for funeral and burial expenses, the Department shall take into account the services essential to a dignified, low-cost funeral and burial, but no payment shall be authorized from public aid funds for the funeral in excess of $300, exclusive of such reasonable amounts as may be necessary for burial space and cemetery charges, and any applicable taxes or other required governmental fees or charges.

Nothing contained in this Section or in any other Section of this Code shall be construed to prohibit the Illinois Department (1) from consolidating existing standards on the basis of any standards which are or were in effect on, or subsequent to July 1, 1969, or (2) from employing any such consolidated standards in determining need for public aid and the amount of money payment or grant for individual recipients or recipient families.

In establishing standards under this Section the Illinois Department shall consult with the Legislative Advisory Committee, as provided in Section 12–14.

cause of action charged that the denial to persons who have the same or greater need for chore and housekeeping services as AFDC, SSI, or SSP recipients and who similarly are without funds necessary to pay for the services but whose income came from a source other than AFDC, SSI or SSP deprived the plaintiffs and the class they represented of the equal protection of the law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.[5]

On January 8, 1976, the named plaintiffs filed a motion seeking class certification and a preliminary injunction. On March 9, 1976, the defendant filed a motion to dismiss. The district court denied the defendant's motion on March 22, 1976, ruling that the plaintiffs had stated a sufficient constitutional claim for purposes of establishing jurisdiction. The district court observed that the Equal Protection claim was not devoid of any merit, implausible or foreclosed by prior Supreme Court decisions. The court also observed that, assuming *arguendo* Title XX had not been violated, it did not necessarily follow that IDPA's classification was rationally related to the purpose of the social services plan.

In its Memorandum Opinion and Order of March 22, 1976, the district court also ruled on the plaintiffs' motion, concluding that the plaintiffs had not met the requisites for preliminary injunctive relief. Accordingly, the court denied their request for a preliminary injunction. The court denied the plaintiffs' motion for class certification on the basis of its conclusion that there was neither necessity for nor benefit to be gained from the certification of a class at that time inasmuch as the injunctive relief, if plaintiffs were successful, would redound to the benefit of all the persons the plaintiffs were seeking to represent.

Following the entry of the district court's order of March 22, 1976, which the plaintiffs did not appeal, the parties and the district court judge agreed to seek a ruling on the merit of plaintiffs' claims as quickly as possible in light of the issues presented and the emergency nature of the case. At a pretrial conference on April 13, 1976, the parties agreed to file cross-motions for summary judgment with stipulated facts. Following briefing on these motions and the filing of stipulated facts and exhibits, the district court, in a Memorandum Opinion and Order entered June 24, 1976, abstained on its own motion from deciding the merits of the case, stayed the federal action and directed the parties to bring proceedings in state court concerning the state law claim set out in their fourth cause of action.

The court's stay order of June 24, 1976, in pertinent part, stated: "The parties are directed to bring proceedings in the state court consistent with this opinion, and the federal action will be stayed pending the outcome of those proceedings." Although the language of the order facially and somewhat uniquely placed upon defendant Trainor an equal responsibility to institute the required proceedings, the appellants have interpreted it as requiring the individually named plaintiffs to first seek a hearing and final administrative decision by the Director of the Illinois Department of Public Aid, followed by state court review.

On July 2, 1976, the plaintiffs filed a motion for reconsideration. Their first argument in support of reconsideration was that there was no state procedure whereby they could obtain an effective and prompt determination of the state law issue contained in their fourth claim. Their supporting memorandum noted correctly that the Illinois Supreme Court, in *Chicago Welfare Rights Organization v. Weaver*, 56 Ill.2d 33,

---

**5.** Plaintiffs in their fifth, and constitutional, claim do not challenge the constitutionality of the Illinois statute, Ill.Rev.Stat.1975, ch. 23, § 12–4.11, either facially or applied, but instead contend that the regulations result in an equal protection violation. A three-judge court would not have been required at the time the suit was filed as the challenge was merely to a

"use of a statute which is not attacked as unconstitutional." *Kendrick v. Walder*, 527 F.2d 44, 46 n. 3 (7th Cir. 1975), *quoting from Ex parte Bransford*, 310 U.S. 354, 361, 60 S.Ct. 947, 84 L.Ed. 1249 (1939). In any event, the plaintiffs have now abandoned the quest for an injunction as to their constitutional claim.

305 N.E.2d 140 (1973), *appeal dismissed, cert. denied*, 417 U.S. 962, 94 S.Ct. 3164, 41 L.Ed.2d 1135 (1974), and in *People ex rel. Naughton v. Swank*, 58 Ill.2d 95, 317 N.E.2d 499 (1974), had ruled that actions challenging eligibility requirements for welfare seeking declaratory, injunctive, or class relief could not be maintained in the courts of Illinois. The plaintiffs' second argument in support of reconsideration was that the issue of state law raised in their fourth cause of action was not unclear, so that its resolution was not necessary to avoid a constitutional adjudication. On July 15, 1976, the district court denied the motion for reconsideration without filing an opinion. The plaintiffs filed a timely notice of appeal, and this court subsequently granted plaintiffs' motion for expedited briefing and oral argument.

## I. THE PROPRIETY OF ABSTENTION

The threshold question in this appeal is whether the district court could appropriately abstain. Initially, we note that the plaintiffs claimed a state law entitlement to chore and housekeeping services under the Illinois Public Aid Code. We agree with the appellee that the state law regarding eligibility standards is unclear and unconstrued. We further agree with the district court that a ruling favorable to the plaintiffs on their fourth cause of action would moot the Equal Protection claim. If the circumstances of the present litigation were such as to place this suit within at least one of the three general categories where abstention is appropriate, *see Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813–17, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), we think that the plaintiffs' effort to wield state law as the basis of their entitlement would be sufficient to activate the abstention doctrine.

■ Upon examination of the more recent Supreme Court abstention decisions, however, we conclude that abstention was inappropriate in this case. The appellants' argument that there are no state court proceedings providing an easy and ample means of clarifying Illinois law correctly states the effect of Illinois court decisions. The viability of the *Chicago Welfare Rights Organization* and *Naughton* rulings cannot be questioned. We also note *Ballew v. Edelman*, 34 Ill.App.3d 490, 340 N.E.2d 155 (Ill.App.Ct.1975), in which the appellate court ruled that the *Naughton* opinion "thus requires initial recourse to administrative remedies by plaintiffs here, with subsequent judicial proceedings by way of administrative review." *Id.* at 161. There can be no question but that Illinois law stringently prohibits class actions challenging eligibility standards.

The interaction of the district court's denial of class status with its sua sponte determination that abstention was appropriate places the class the plaintiffs sought to represent in a very difficult position. Because the governing statute prohibits all efforts by a class of denied recipients to secure a judicial determination of the validity of eligibility standards, the persons similarly situated with the named plaintiffs simply cannot secure relief in the state court proceedings which the district court's stay order directs. Moreover, the named plaintiffs themselves cannot comply immediately with the order to bring proceedings in a state court. They must first pursue individual administrative proceedings within the IDPA before resorting to the courts. Further, it is not clear that defendant Trainor can properly commence a state court proceeding to secure either a judicial validation or invalidation of the eligibility standards promulgated in the final version of the Illinois Comprehensive Annual Services Plan. The court's direction that the defendant undertake such action cites no Illinois authority authorizing such a procedure, and we are unaware of any statutory or decisional authority authorizing such a suit.

■ We cannot fault the district court's reluctance to pass upon the merits of the plaintiffs' Equal Protection claim. The Supreme Court, has persistently ruled that abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of

pertinent state law." *Colorado River Water Conservation District, supra,* 424 U.S. at 814, 96 S.Ct. at 1244. It has further observed that courts may appropriately abstain where there have been presented difficult questions of state law bearing on policy problems of substantial importance whose importance transcends the result in the case then at bar. *Id.*

■ In the present case, however, the stay order does not meet the equitable standards which the Supreme Court has also consistently pressed. As *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 500–01, 61 S.Ct. 643, 85 L.Ed. 971 (1941), first indicated, and *Bellotti v. Baird,* 428 U.S. 132, 143, 96 S.Ct. 2857, 2864, 49 L.Ed.2d 844 n.10 (1976), has but recently confirmed, "[t]he practice of abstention is equitable in nature . . . ." While *Bellotti* again noted the numerous occasions where the Supreme Court had held abstention appropriate, *viz.,* where an unconstrued state statute is susceptible of a construction by the state judiciary which might "avoid in whole or in part the necessity for federal constitutional adjudication,̄ or at least materially change the nature of the problem," *id.* at 147, 96 S.Ct. at 2866,[6] it emphatically recognized the equitable concerns which should guide the federal courts in such litigation. More recently, albeit in the context of 28 U.S.C. § 1341, the Supreme Court in *Tully v. Griffin, Inc.,* —— U.S. ——, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976), touched once again upon the recurrent theme of equity practice, principles of federalism, and the imperative need of a State to administer its own fiscal operations.

We think that the principles articulated in *Bellotti* govern the case at bar. We recognize that the parties did not bring that decision to the attention of the district court, but it clearly was decisional precedent at the time of the plaintiffs' motion

for reconsideration. Similarly, *Ballew's* stringent reading of the Illinois law was available for the district court's consideration.

In *Bellotti, supra* at 143, 96 S.Ct. 2857 n.10, the Supreme Court expressly noted that there had been no injury to the appellee's rights due to the delay (if any) in the appellants' coming forth with a constitutional interpretation of the parental consent requirement of the abortion statute. It further observed, *id.* at 151, 96 S.Ct. 2857, that each day the statute was in effect, irretrievable events with substantial personal consequences occurred. In that case, of course, the challenged portion of the statute had never gone into effect. Here, the IDPA's eligibility standards have operated to deny the named plaintiffs the chore and housekeeping services which they need. The *Bellotti* court was able to conclude that the cost of abstention was reduced and the desirability of that equitable remedy accordingly increased because it could assume that the lower Massachusetts courts would not impose the serious barrier of a "parental veto" to an abortion, so that the issue was not one of total denial of access to that medical procedure but one of relative burden. *Id.* at 148–151, 96 S.Ct. 2857.

Our case is much different. All three of the named plaintiffs are unable to care for themselves in their own homes without the assistance of a housekeeper. Indeed, one of the named plaintiffs had been receiving direct IDPA payments for some fifteen months prior to the defendant's determination that she was not eligible and IDPA's refusal to continue supplementing the family's income to provide for this social service need. Moreover, the Illinois Supreme Court, unlike the Supreme Judicial Court of Massachusetts, will not allow an issue of interpretation regarding Ill.Rev.Stat.1975, ch. 23, § 12–4.11, to be certified directly for

---

**6.** The Supreme Court cited *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959), as its primary authority, but also relied upon *Colorado River Water Conservation District, supra* ; *Carey v. Sugar,* 425 U.S. 73, at 78, 96 S.Ct. 1208, at 1210, 47 L.Ed.2d 587 (1976); *Kusper v. Pontikes,* 414 U.S. 51, 54–55, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 510–11, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); *Zwickler v. Koota,* 389 U.S. 241, 249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); and *Railroad Comm'n v. Pullman Co., supra.*

prompt resolution. Indeed, the plaintiffs in *Chicago Welfare Rights Organization* and *Ballew, supra,* were seeking declaratory relief regarding that very statutory section. That the Illinois Public Aid Code remains unclear and unconstrued stems from the refusal of the Illinois courts to deviate from the review procedures set forth in the Administrative Review Act.

We hold no quarrel with the rulings on state procedural law rendered by the Illinois courts. The reasoning of *Chicago Welfare Rights Organization, supra,* represents an example of traditional judicial restraint. In that case, *id.,* 305 N.E.2d at 143, the Illinois Supreme Court expressly stated that "there is no requirement that administrative remedies be exhausted when a State welfare plan is challenged under section 1983 in a Federal court." Our case represents such a challenge. The district court was bound to follow *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and its progeny. Although the stay order facially directs the parties to commence state court proceedings, it is clear to us that the Illinois courts will not countenance any such action because the General Assembly has enacted a statute precluding it. *See* Ill.Rev.Stat.1975, ch. 110, § 265. The necessary effect of the stay order is the imposition upon the plaintiffs of a requirement that they exhaust administrative remedies.

■ In the instant case, we are bound to follow the equitable principles enunciated in such cases as *Pullman* and *Bellotti, supra.* The latter decision articulates the importance of saving time, energy, and resources while promoting a cooperative judicial federalism. *Cf. Bellotti, supra,* 428 U.S. at 150, 96 S.Ct. 2857. In a case where the needs of the plaintiffs are stipulated and there exists the substantial possibility of their potentially irretrievable confinement in nursing, sheltered care, or boarding facilities, we cannot ignore the delay, the expense, or the inadequacy of the review procedures which the Illinois legislation imposes.

■ In deciding that abstention is improper we do not intend any adverse criticism of the rulings of the state courts in cases in which welfare rights organizations have sought a construction of Ill.Rev.Stat. 1975, ch. 23, § 12–4.11. We are persuaded that the Illinois Supreme Court's recognition that a federal district court could not justifiably require a first attempt to secure relief under the state law providing an exclusive administrative remedy was an effort to secure and promote both comity and federalism. The prohibitory language of the pertinent section of the Administrative Review Act, *see* Ill.Rev.Stat.1975, ch. 110, § 265, impeded the state court from rendering a decision totally consistent with the federal rule against exhaustion. The efforts of the United States Supreme Court and of this court to avoid undue friction with the state judiciary have used such concepts as abstention, comity, and federalism as an interpretative matrix. After *Colorado River Water Conservation District, supra,* it has become clear that abstention is the exception rather than the rule. If a case does not fall within the categories set forth in *Colorado River Water Conservation District* or presents circumstances where decisive equitable principles or controlling federal rules regarding exhaustion will be violated, the district court must adjudicate the case. A jurisdiction conferred by statute cannot be evaded through talismanic invocation of the judicial concepts of abstention, comity, or federalism.

Upon remand, the district court, following well established principles, will initially consider the state law and statutory claims. In connection with the latter, it has come to our attention that, on September 7, 1976, Congress enacted an amendment to Title XX of the Social Security Act so as to permit greater latitude by the states in establishing criteria respecting eligibility for social services. If the district court finds it necessary to rule upon the Title XX claims in order to enter a judgment on the merits, it no doubt will desire the parties to submit additional briefs analyzing the impact of the recent legislative materials upon the question of Congressional intent. The 1976 amendment does not directly affect

the claims here in issue, but the legislative reports do provide a fuller picture of the Congressional intent respecting the Social Services Amendments of 1974. We intimate no view on the merits of any of the plaintiffs' claims.

## II. THE DENIAL OF CLASS CERTIFICATION

■ In *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 166 n.2 (7th Cir. 1976) (en banc), *cert. denied*, —— U.S. ——, 97 S.Ct. 506, 50 L.Ed.2d —— (1976), this court recognized its power to review a denial of a plaintiff's motion seeking an order pursuant to Fed.R.Civ.P. 23(c)(1) that the action be maintainable as a class action where an appeal was taken formally from the denial of a plaintiff's motion for a preliminary injunction. Here, the named plaintiffs did not appeal from the denial of their motion for a preliminary injunction. We are persuaded, however, that *Drexler's* ruling that a stay order was sufficiently "final" for purposes of appellate review under 28 U.S.C. § 1291 brings into play the general rule that on appeal of a final judgment all interlocutory rulings are open for review.

■ The district court denied certification of a plaintiff class because of its view that class action status was unnecessary. In this circuit, however, it is clear that, if the prerequisites and conditions of Rule 23 have been met, "a court may not deny class status because there is no 'need' for it." *Fujishima v. Board of Education*, 460 F.2d 1355, 1360 (7th Cir. 1972). We reject the appellee's argument that *Jimenez v. Weinberger*, 523 F.2d 689 (7th Cir. 1975), *cert. denied*, —— U.S. ——, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976), allows this court to disregard the controlling law of the circuit.

Assuming that the other requirements of Rule 23(a) have been met, as to which we express no opinion, we conclude that it was practicable to certify a Rule 23(b)(2) class on or before March 22, 1976. We cannot accept the argument that the district court complied literally with the requirement of Rule 23(c)(1).[7] The record discloses no judicial inquiry whatsoever regarding the preliminary questions of numerosity, commonality, or adequacy of representation.

We recognize that the district court has retained jurisdiction in this case, that its stay order contemplated an eventual entry of judgment on the merits, and that *Jimenez, supra* indicates that, in some cases, the final certification in a Rule 23(b)(2) class action need not be made *until* the moment the merits are decided. However, the *Jimenez* court expressly noted, *supra* at 697 n.14, that it did not imply approval of the district court's failure to certify the class. Moreover, the *Jimenez* court expressly stated that the district court had failed to reach the class issue as soon as practicable, as required by Rule 23(c)(1). *Id.* at 699.

■ Thus, the denial of class certification in this case not only contravened the square holding in *Fujishima* but also did not comply with the plain language of Rule 23(c)(1). Accordingly, the district court upon remand is instructed to determine whether the case can properly proceed as a class action. *See White v. Roughton*, 530 F.2d 750, 754 n.13 (7th Cir. 1976).

For the reasons hereinbefore stated, the stay order of June 24, 1976, is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

7. Fed.R.Civ.P. 23(c)(1) provides:

   As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.