YESTERDAY'S CHILDREN et al.,
Plaintiffs-Appellants,

v.

Margaret KENNEDY et al.,
Defendants-Appellees.

No. 77–1870.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1977.

Decided Dec. 29, 1977.*

Petition for Rehearing Denied
Jan. 16, 1978.

Patrick T. Murphy, Douglas C. Nohlgren, Chicago, Ill., amicus curiae.

John A. Dienner, III, Asst. State's Atty., Bernard Carey, State's Atty., Herbert Lee Caplan, Asst. Atty. Gen., William J. Scott, Atty. Gen., Chicago, Ill., for defendants-appellees.

Before CUMMINGS and BAUER, Circuit Judges, and GRANT, Senior District Judge.**

CUMMINGS, Circuit Judge.

Plaintiffs are eight adults who were adopted as infants and Yesterday's Children, which is a not-for-profit Illinois corporation consisting of approximately 6,000 adults who were also adopted as infants. Their civil rights complaint was brought under 42 U.S.C. § 1983 against four Illinois officials [1] and the presiding judge, County

---

* This appeal was originally decided by unreported order on December 29, 1977. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

** Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. The Director of the Illinois Department of Children and Family Services, the Director of the Illinois Department of Public Health, the Clerk of Cook County, and the Attorney General of Illinois.

Division, of the Circuit Court of Cook County. Plaintiffs sought injunctive relief and a declaratory judgment that two Illinois statutes[2] violate the First, Fifth, Ninth, Thirteenth and Fourteenth Amendments because they prevent the individual plaintiffs from ascertaining their natural parents' identity. They also sought a declaratory judgment that defendant officials and officials of private agencies acting under color of state law violate those amendments by preventing plaintiffs from ascertaining the identity of their natural parents. The individual plaintiffs claim that they were denied access by defendants to the names of their natural parents or, in one instance, the name of her natural brother.[3] Seven of the named plaintiffs are members of Yesterday's Children. None of the plaintiffs sought any relief in the Illinois courts.

According to plaintiffs, Illinois has maintained a statutory and "actual policy" of preventing adopted children from discovering the names and circumstances of their natural parents and blood relatives. Similarly, adoption agencies formalized by Illinois statute and licensed by the employees of the Illinois Department of Children and Family Services have denied adoptees this information. Adoptees have been able to review their adoption records "only if they

can demonstrate critical medical reasons to justify their request" (Complaint par. 27). Plaintiffs claim that their constitutional rights have been violated by the two statutes in question,[4] by a General Order entered by the presiding judge of the County Division of the Circuit Court of Cook County on February 21, 1974, which provides that " * * * all adoption files in the offices of the Clerk of the Circuit Court shall be impounded and shall be released only upon an order issued from the County Division of the Circuit Court," and "by the action of state officials and private child adoption agencies acting under the color of state law" (Complaint par. 32).

The constitutional violations are alleged as follows (Complaint pars. 33–35):

"The State of Illinois has denied the Plaintiffs their Fourteenth Amendment rights to the equal protection of the laws by preventing their access to information concerning their background, based on the suspect classification of their status as adoptees.

"The Plaintiffs' rights to acquire useful information (including the right to determine their natural heritage) have been violated. These liberties are protected by a penumbra of rights emanating from the Bill of Rights, specifically the First,

---

**2.** Ill.Rev.Stat., ch. 4, § 9.1–18 and ch. 111½, § 73–17(2)(a) and (4).

**3.** In discovery, two of the plaintiffs revealed that they had uncovered the information by their "own methods." If the plaintiffs were seeking damages this admission might be significant (cf. *Piphus v. Carey*, 545 F.2d 30 (7th Cir. 1976), *certiorari granted*, 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 355) but defendants have not argued that this admission should affect plaintiffs' request for declaratory and injunctive relief.

**4.** The statutory provisions assailed in the complaint are as follows:

Ill.Rev.Stat., ch. 4, § 9.1–18:
Records confidential. The word 'illegitimate' or the words 'born out of wedlock', or words importing such meaning, shall not be used in any adoption proceeding in any respect.
Upon motion of any party to an adoption proceeding the court shall, or upon the court's own motion the court may, order that the file relating to such proceeding shall be

impounded by the clerk of the court and shall be opened for examination only upon specific order of the court, which order shall name the person or persons who are to be permitted to examine such file. Certified copies of all papers and documents contained in any file so impounded shall be made only on like order.

Ill.Rev.Stat., ch. 111½, § 73–17(2)(a):
Thereafter, the original certificate and the evidence of adoption, paternity, legitimation, or sex change shall not be subject to inspection or certification except upon order of a court of competent jurisdiction or as provided by regulation.

Ill.Rev.Stat., ch. 111½, § 73–17(4):
When a new certificate of birth is established by the State Registrar of Vital Records, all copies of the original certificate of birth in the custody of any custodian of permanent local records in this State shall be transmitted to the State Registrar of Vital Records as directed, and shall be sealed from inspection.

Fifth, Ninth and Fourteenth amendments of the U.S. Constitution.

"The Plaintiffs' rights to be free from involuntary servitude as protected by the Thirteenth Amendment to the U.S. Constitution have been violated by the statutes and actions complained of. As adopted infants the Plaintiffs were placed into a chattel status—an unfortunate but explicable happenstance. However, the state's continued insistance [sic] on maintaining that chattel status even into adulthood and until death violates the Plaintiffs' Thirteenth Amendment rights."

In June 1975, the district judge to whom the case was originally assigned declined to convene a three-judge court on the ground that this General Order of the Circuit Court of Cook County "lies at the heart of the matter" and should be reviewed before any statutory question need be reached. In October 1975, he dismissed the complaint without prejudice on the ground of abstention because "the complaint involves a basic question of State public policy which has not been passed upon by the State courts, i. e., whether the plaintiffs should generally be deprived of access to the record of their personal origins."

The dismissal was appealed and in May 1976 this Court handed down an order holding that a three-judge court was required to hear plaintiffs' constitutional challenge because the complaint "presented a substantial federal question." By dictum,[5] the panel considered abstention to be inappropriate.

In August 1977, a three-judge district court granted defendants' motions to dismiss the action without prejudice on the grounds of abstention.[6] The opinion reasoned that the Illinois courts could "apply the [two] statutes in such a way as to withstand constitutional attack" (mem.op. 6). To support abstention, the opinion relied principally on *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513; *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844; and *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376.[7] We have jurisdiction of this appeal from that decision because the three-judge district court did not reach the merits of plaintiffs' constitutional arguments (*MTM, Inc. v. Baxley,* 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636), nor do we. Our affirmation is based solely on abstention.

I. *Analysis of the State Court Construction of Challenged Statutes and General Order.*

After this appeal was filed, the Circuit Court of Cook County, County Division, County Department, handed down an unreported opinion dealing with the above statutory provisions in *In the Matter of Daniel Doe,* 76 Co 2436 (November 22, 1977). In that case, an emotionally disturbed adoptee, represented by the same counsel as these plaintiffs, sought knowledge of his familial background at the suggestion of his psychiatrist, and the court decided that the adoption record should be released on the following conditions:

"It is therefore ordered that _____ be appointed as investigator and friend of the court to investigate this matter. He shall contact the biological parents and the adoptive parents, give them notice of

---

**5.** Even if the dictum were somehow considered binding at the time, the presence of intervening Supreme Court decisions (*e. g., Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513; *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844) would justify a second look at the abstention question. See 1B Moore's *Federal Practice* ¶ 0.404[2]; cf. *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476.

**6.** The Association for the Protection of the Adoptive Triangle was permitted to file a brief *amicus curiae* below. It has also filed an *amicus* brief here urging affirmance.

**7.** As additional support, the opinion cited *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483; *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486; and *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752. See also *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482.

the pendency of this proceeding and that the records will be released if the evidence of substantial harm is not presented to this Court. The biological parents and the adoptive parents will be given leave to intervene and show by a preponderance of the evidence that substantial harm will transpire if the relief requested is granted. Absent such a showing, this Court will order the adoption records be opened for petitioner's examination, and the original birth certificate be opened for the petitioner's inspection. Ill.Rev. Stat. Ch. 4, § 9.1–18, Ch. 111½ § 73–17.

"If the investigator is unable to locate the biological parents or the adoptive parents within a reasonable period of time, the petitioner will be required to publish notice of the pendency of this proceeding for 30 days in a publication of general circulation. If no appearance is made, and no showing of substantial harm is presented, the relief requested will be granted."

In the well-reasoned opinion, the state court judge noted that no Illinois appellate court had yet interpreted the statutory provisions in question but that most states requiring the sealing of adoption records permit the unsealing of those records upon a showing of good cause. Judge Schneider observed that in Scotland adoption records have been open to any adoptee who has reached the age of 17, and that Parliament recently enacted a similar law for England and Wales. After noting the arguments that the Illinois statutes might violate the Due Process and Equal Protection clauses of the Fourteenth Amendment, be inconsistent with the penumbra of rights emanating from the Bill of Rights in the Federal Constitution or be unconstitutionally vague, the court concluded that under the Illinois statutes, the rights of adoptees,

their biological parents, and their adoptive parents have to be weighed against "possible detrimental effects." Consequently, the court adopted the above procedure "to balance those rights, and on the basis of the unique facts in each case, arrive at an equitable and just solution."

It is thus apparent that the *Daniel Doe* court would not limit the unsealing of adoption records to cases where adoptees can show "a probable and serious hereditary problem" or "critical medical reasons," as claimed by plaintiffs (Br. 3, 5) or where "genetic, medical, psychological or other problems manifest themselves as requiring such information or where neither party objects to the disclosure." [8] Instead in *Daniel Doe* the following standard has seemingly been read into the statutes and General Order: the petitioner must show by a preponderance of the evidence that, as an adult, he or she has a real and immediate need for such records, and if such a showing is made, the biological and adoptive parents in order to avoid unsealing must show by a preponderance of the evidence that substantial harm will transpire if the relief requested is granted.

## II. Application of Abstention Principles

Despite this construction by one state trial court, it appears that abstention to allow more expanded consideration by the Illinois courts may "materially alter the constitutional issue presented" (*Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 481, 97 S.Ct. 1898, 1905, 52 L.Ed.2d 513), and that the benefits of such abstention are not "too speculative to justify or require avoidance of the question presented." *Id.* The fact that a state trial judge read a type of good cause requirement into

---

8. This pre-*Daniel Doe* quotation appears in plaintiffs' principal brief (at pp. 4, 10) and in their reply brief (at pp. 2, 3) and is taken from p. 7 of defendants' memorandum below and from p. 15 of their brief here. Although this is one possible interpretation of the statutes and General Order, both parties' use of the phrase "or other problems" indicates that unsealing may be appropriate in other undefined cases or

perhaps when good cause is shown. At oral argument, defendants suggested that a court might interpret a plaintiff's adulthood to constitute good cause and that a standing court order could so provide, or a regulation under Ill.Rev. Stat., ch. 111½, § 73–17(2)(a). We leave it to the Illinois courts to determine which of the many possible standards and definitions will be applied.

the statutes and General Order [9] does not remove their ambiguity for two reasons. First, good cause is subject to many diverse interpretations. See *Bellotti v. Baird,* 428 U.S. 132, 143–146, 148, 96 S.Ct. 2857, 49 L.Ed.2d 844.[10] While it could be argued that Judge Schneider offered a more specific standard than good cause, even that arguably more specific standard does not contraindicate the benefits of abstention because it merely substitutes for good cause several other broad terms that were not defined in the unreported *nisi prius* opinion and will have to await further interpretation. The *Daniel Doe* opinion does indicate that on the facts there, the petitioner must show by a preponderance of the evidence that he has a real and immediate need for the information; and if such a showing is made, the biological and adoptive parents must show by a preponderance of the evidence that substantial harm will result if the information is released. However, the opinion offers little reasoning for finding that the petitioner had shown a "real and immediate need," and given the procedural posture of the case, the parents had not yet made a showing, and therefore the term "substantial harm" was left undefined.

Second, even if Judge Schneider's unappealed opinion did define conclusively all the unclear standards, until an Illinois reviewing court (which will of course be fully competent to adjudicate constitutional claims, *Doran v. Salem Inn Inc.,* 422 U.S.

922, 930, 95 S.Ct. 2561, 45 L.Ed.2d 648) considers the statute and the General Order, their construction will remain in doubt despite Judge Schneider's persuasive opinion. As the Second Circuit held in *Connecticut State Federation of Teachers v. Board of Education,* 538 F.2d 471, 485 (1976), decisions by state trial judges, particularly unreported decisions, generally provide insufficient clarity to make abstention inappropriate, at least in the absence of a similar decision by the state's appellate courts.[11] Cf. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886.

Given this need for appellate review of the *Daniel Doe* interpretation and the ambiguities that remain despite that interpretation, this case is one in which the state courts by further explicating the standards for unsealing may construe the statutes and General Order so as to materially alter plaintiffs' constitutional challenge. See *Kusper v. Pontikes,* 414 U.S. 51, 54–55, 94 S.Ct. 303, 38 L.Ed.2d 260; *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152. Like the statute in *Bellotti,* the Illinois statutes and General Order challenged here and the standards of proof implied therein are "susceptible" to so many different interpretations,[12] requirements and applications that "it is impossible to define precisely the constitutional issue presented." 428 U.S. at 148, 96 S.Ct. at 2866.

---

**9.** As the three-judge court explained, absent the Illinois statutes, the General Order may not reflect state-wide policy and therefore might not be a proper subject for review by that tribunal (mem. op. 7). See *Board of Regents v. New Left Education Project,* 404 U.S. 541, 544 n. 2, 92 S.Ct. 652, 30 L.Ed.2d 697.

**10.** Although Justice Blackmun's opinion for the Court in *Bellotti* discussed abstention in order to allow states to interpret "unconstrued" statutes, 428 U.S. at 147, 96 S.Ct. 2857, we do not view that language as prohibiting abstention in cases in which statutes have been construed by a state court but remain unclear. In *Kusper v. Pontikes, infra,* for example, the Supreme Court was asked to abstain from a challenge to an Illinois statute that already had been construed by Illinois courts. While the Court declined to abstain, instead of basing its decision

on the rationale that the statute already had been construed, its decision was based on the fact that after examining the statute in light of the state opinion, the Court found it sufficiently clear. See *Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587. Here, however, our examination of state law reveals that it is sufficiently unclear to be susceptible of an interpretation that would alter the constitutional issue.

**11.** The Supreme Court's reference to reported decisions of two New York trial courts in *Carey v. Sugar,* 425 U.S. 73, 78, 96 S.Ct. 1208, 47 L.Ed.2d 587, is distinguishable because those decisions were reported and seemed to follow a trend first begun by the state's highest court. See *id.*

**12.** See *e. g.,* note 8 *supra.*

Plaintiffs seek to avoid abstention by arguing that their case includes a claim that merely being required to appear in court infringes their right to information and their right to equal protection and that therefore no conceivable state court construction would materially alter that claim. However, a fair reading of plaintiffs' complaint reveals that the essence of that complaint disputes the standards on which courts could release the information and not the requirement of a court appearance. See *e. g.* ¶ 24. Had this Court in its May 1976 order in this case understood the complaint to be merely objecting to the requirement of a court appearance, judging from its reasoning it probably would have declined to convene a three-judge court based on the lack of a substantial federal question.

Indeed, not only does this case satisfy the *Hodory* branch of abstention, but it is arguably a case in which there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District, supra,* 424 U.S., at 814, 96 S.Ct. at 1244.

Under either branch of abstention, unlike the plaintiffs in *Vickers v. Trainor,* 546 F.2d 739 (7th Cir. 1976), plaintiffs here have not demonstrated that "substantial personal consequences" (see *Bellotti v. Baird, supra,* 428 U.S. at 151, 96 S.Ct. 2857) would result from whatever delay a state adjudication would entail.[13] Unfortunately, *Daniel Doe* is not the final Illinois word in construing these statutes and General Order, and at least in the absence of equitable considerations to the contrary it is advantageous in this case to allow the state courts of review to define the statutes and General Order further. Therefore, we agree with the

court below that it was inappropriate for it to reach the merits of this controversy.

Order affirmed.

---

13. It does not minimize plaintiffs' claims to note that those claims are less immediate than the need for an abortion at issue in *Bellotti* or even the daily confinement at issue in *Vickers.* In any event, *Bellotti* leaves unclear whether a court in abstaining need make a specific inquiry into the issue of delay and if so on whom the burden of proof should be placed. See 428 U.S. at 143 n. 10, 96 S.Ct. 2857. On the facts of this case and in the absence of argument by the plaintiffs, we decline to hold that any harm of delay affects our conclusion on the need for abstention.