**Thomas E. LISTER et al., Plaintiffs-Appellants,**

**v.**

**Patrick J. LUCEY et al., Defendants-Appellees.**

**No. 77–1757.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1978.

Decided May 4, 1978.

---

Daniel W. Hildebrand, Madison, Wis., for plaintiffs-appellants.

Betty R. Brown, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendants-appellees.

Before SWYGERT, CUMMINGS and TONE, Circuit Judges.

CUMMINGS, Circuit Judge.

About six and one-half years ago, plaintiffs commenced this action in the Western District of Wisconsin challenging the constitutionality of a Wisconsin statute. After part of their complaint was dismissed, in 1973 the district judge abstained on the authority of *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, and retained jurisdiction while plaintiffs sought relief in the state courts. In July 1976, having been presented with no clarifying interpretation of state law, the district court dismissed the complaint and plaintiffs filed this appeal.

At the time their first complaint was filed, the four plaintiffs were students at the University of Wisconsin Law School and were classified as nonresidents for tuition purposes. Their October 27, 1971, complaint was a class action under 42 U.S.C. § 1983 challenging Wis.Stats. § 36.16 and seeking injunctive, declaratory and monetary relief. Section 36.16, which defined residents and nonresidents for tuition purposes,[1] was asserted to be unconstitutional

---

1. Section 36.16 provided in pertinent part:

"36.16 *Nonresident tuition at university; exceptions*

"(1)(a) Any adult student who has been a bona fide resident of the state for one year next preceding the beginning of any semester for which such student registers at the university, or any minor student whose parents have been bona fide residents of the state for one year next preceding the beginning of any semester for which such student registers at the university, or any minor student whose natural parents are divorced or legally separated who has resided substantially in this state during his years of minority and at least one year next preceding the beginning of any semester for which such student registers at the university or whose mother or father has been a bona fide resident for one year next preceding the beginning of any semester for which such student registers at the university, or any minor student who is an orphan and who has resided substantially in this state during his years of minority and at least one year next preceding

the beginning of any semester for which such student registers at the university or whose legal guardian has been a bona fide resident for one year next preceding the beginning of any semester for which such student registers at the university, or any minor student under guardianship in this state pursuant to ch. 48 or 880 who has resided substantially in this state during his years of minority and at least one year next preceding the beginning of any semester for which such student registers at the university or whose legal guardian if a person has been a bona fide resident of the state for one year next preceding the beginning of any semester for which such student registers at the university, shall while he continues a resident of the state be entitled to exemption from nonresident tuition, but not from incidental or other fees and tuition in the university.

"(ab) Nonresident members of the armed forces who are stationed in this state and their wives and children shall be entitled to the exemptions provided in par. (a) during the period that such member of the armed forces is stationed in this state.

"(ac) Any female student who attended the university as a minor student exempt from the fees for nonresident tuition, and, who would continue to be entitled to the exemptions provided in par. (a) except for having married a nonresident, shall continue to be entitled to such exemptions.

    \*    \*    \*    \*    \*    \*

"(ae) Any female who marries a bona fide resident shall be entitled to the exemptions provided in par. (a) effective the semester following her marriage and while continuing to reside in this state.

    \*    \*    \*    \*    \*    \*

"(b) Any student who has not been a resident of the state for one year next preceding the beginning of any semester for which such student registers at the university, except as above provided, shall not be exempt from the payment of the nonresident tuition fees.

"(c) Except as otherwise provided in this section, the board of regents shall charge a nonresident tuition fee at the rate of not less than $200 per school year for any student who shall not have been exempted by this section, and may prescribe special rates of tuition for professional and graduate courses and for teaching extra studies, and for students in the university extension, and summer session divisions. The board of regents may fix the nonresident tuition fee of any resident of another state maintaining a university [residence] at a sum less than $200 per school year but not below the sum fixed in such other state for attendance by residents of Wisconsin at the university maintained by such other state.

"(d) The board of regents of the university may remit nonresident tuition either in whole or in part, but not other fees, to a number of needy and worthy nonresident students, not exceeding 8% of the number of nonresident students registered in the preceding year, upon the basis of merit, to be shown by suitable tests, examinations or scholastic records and continued high standards of scholastic attainment. The board of regents may remit nonresident tuition in whole or in part, but no other fees, to additional individual students at the university not exceeding 2% of the number of nonresident students registered in the preceding year who, in the judgment of the board of regents, are deserving of relief from the assessment of nonresident tuition because of extraordinary circumstances.

    \*    \*    \*    \*    \*    \*

"(2) In addition to the number of remissions of nonresident tuition authorized under sub. (1), each state senator and each \* \* \* representative to the assembly may recommend for attendance at the university a nonresident whose scholastic qualifications entitle him to attend the university and whose nonresident tuition for the school year for which recommended shall be remitted by the board of regents. Not more than one such remission shall be made for any one member and each nonresident whose tuition shall have been remitted under this subsection shall be entitled to continue in attendance at the university for the period for which recommended·if such nonresident continues to meet the university's general standards for continuance therein as a student. Such recommendations shall be submitted annually to the board of regents in such manner as the board of regents may designate not later than the end of the first week of instruction of the semester in which the remission of tuition is to be effective, provided that a state senator or \* \* \* representative to the assembly who assumes office during a school year may make a recommendation for the 2nd semester of that year only when a recommendation of his predecessor is not effective for that term and provided further that should any nonresident student so recommended for any year fail to matriculate for any semester a successor for such semester may be recommended by such state senator or \* \* \* representative to the assembly.

"(3) In determining bona fide residence, filing of state income tax returns in Wisconsin, eligibility for voting in this state, of Wisconsin, motor vehicle registration in Wisconsin, and employment in Wisconsin shall be considered. Notwithstanding the provisions of par. (1)(a), a student from another state who is in this state principally to obtain an education will not be considered to have established a residence in Wisconsin by virtue of attendance at educational institutions.

"(4) In addition to the remission of resident and nonresident tuition under sub. (1), the university shall as athletic scholarships grant full remission of fees, and resident and nonresident

on its face because subsection (1)(ae) "granted resident status to resident women who are wives of resident working husbands, but not to resident men who are husbands of resident working wives" and unconstitutional as interpreted by the defendant officials because it was being construed "so as to create an irrebutable [sic] presumption of non-residency for such students who commence their studies shortly after establishing residency in the State of Wisconsin" (Complaint ¶ 23).

Before the original defendants answered the complaint, on November 15, 1971, plaintiffs filed an amended complaint which added several defendants. The defendants were and are those who were then serving as Governor of Wisconsin, Regents of the University of Wisconsin, the President of the University of Wisconsin, and the Chancellor, Registrar, Residency Examiner and the members of the Committee on Appeals from Non-Resident Tuition of the University of Wisconsin, Madison campus. All were sued in both their individual and official capacities and the Regents also were sued as a collective body. The amended complaint set forth facts and allegations about each of the named plaintiffs in order to indicate that they were bona fide residents of the state, such as the dates upon which plaintiffs moved to Wisconsin, acquired drivers' licenses, registered automobiles, registered to vote, and paid state income taxes. Plaintiffs Lister, Cooney and Turley further alleged that they were dependent upon the earnings of their wives, who were full-time employees of Wisconsin employers. In a part of the amended complaint that became important in the district court's January 1972 order, plaintiffs explained that Cooney had applied for resident status to the Registrar, Residency Examiner and "Committee for resident status" in January of 1971, that Thiel had done so in August and Lister in September of that same year and that Turley had not applied because he viewed such an application as a futile exercise. As to the constitutional issues involved, the amended complaint added the contention that Section 36.16 "granted exemptions from nonresident tuition to nonresidents while denying resident status to plaintiffs * * *," apparently in reference to sections of the statute such as (1)(ab) and (4), which exempt from nonresident tuition members of the armed forces and certain athletes.

On December 3, 1971, defendants moved to dismiss the amended complaint for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim upon which relief could be granted. Reasoning that no case or controversy existed as to the semesters for which a plaintiff failed to apply to the University officials for an exemption, in an opinion and order on January 24, 1972, the district court dismissed claims for damages for those semesters.[2] Also involved in the January 24 opinion and its subsequent reconsideration (but no longer pivotal issues on this appeal) were plaintiffs' requests for an interlocutory injunction, for summary judgment and for the convening of a three-judge court, and the district court's further inquiry into whether subject matter jurisdiction was lacking because of an insufficient amount in controversy.[3]

By December of 1972, three of the four named plaintiffs had been granted resident

---

tuition up to the maximum number of students enrolled on the Madison campus for whom such remission is permitted under Big Ten rules, as recommended by the Madison campus athletic director."

**2.** The district court did not state in its order how many semesters were involved and the complaint leaves the question unclear. Compare, e. g., ¶ 40 with ¶ 27. It is clear, however, that the dismissal at least did affect recovery

for one semester by named plaintiff Turley. See ¶ 40.

**3.** The age of this case is reflected by the fact that, because the complaint was filed before *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, the district court was unsure whether a controversy exceeding $10,000 in value was required. When that decision was handed down in March of 1972, the district court quickly affirmed its jurisdiction.

status for their remaining semesters; therefore pursuant to a stipulation and order granting leave for filing they filed a second amended complaint. That pleading added two reasons why Section 36.16 was unconstitutional: first, it asserted that the language in subsection (3) excluding from resident tuition those in Wisconsin "principally to obtain an education" was vague, created an impermissible classification and interfered with the right to travel; next it added that the Section had been administered in an arbitrary and irrational manner, without objective standards or adequate reasons for refusals.

Shortly after the second amended complaint was filed, plaintiffs moved for partial summary judgment and defendants responded with a motion to dismiss and a motion to stay further proceedings. This motion to stay initially was premised on the existence of two pending state court claims similar to those in plaintiffs' second amended complaint. In granting the motion to stay in an opinion and order on July 11, 1973, however, the Court assumed that there were no state court actions pending[4] but concluded that *Pullman* abstention was appropriate because plaintiffs' constitutional claims could be substantially altered or obviated altogether if the state court resolved two issues of state law: "whether the statute creates an irrebuttable presumption against resident classification for students coming to Wisconsin principally for their education and whether the statute authorizes different treatment for males married to female residents than for females married to male residents" (Mem. op. 11). The district court retained jurisdiction of the action pending resolution in state court of the assertedly unclear issues of state law.[5]

Rather than appealing this order, plaintiffs commenced an action in the Circuit Court for Dane County, Wisconsin, against the Board of Regents and Thomas H. Hoover, Registrar at the Madison campus. The complaint, filed in September 1973, sought declaratory relief and a refund of the nonresident tuition previously paid.[6] Defendants demurred on two grounds, the significant ground for this appeal being that "the court lacks jurisdiction over the subject matter in that the plaintiffs have not followed the dictates of Section 285.01 regarding an action for debt against a state agency." Although plaintiffs contend that the Circuit Court for Dane County in the nonresident tuition context had declined to

4. Plaintiffs had brought before the court evidence that one of the state cases was about to be dismissed on stipulation and the other was subject to a stipulated continuance pending resolution of another case.

5. The opinion of July 11, 1973, also denied plaintiffs' request for a three-judge court on the grounds that the complaint focused more on the statute's administration than the statute itself and that it would be possible to enjoin the administration without declaring the statute unconstitutional. Although plaintiffs did not challenge this ruling at the time, in response to a question at oral argument they contended with some support (given one of the challenges in the October 1971 complaint and another in the December 1972 complaint, both of which were directed at the statutory language itself) that the holding that a three-judge court was unnecessary may have been an extremely narrow interpretation of the now repealed 28 U.S.C. § 2281. See *Stone v. Egeler,* 506 F.2d 287 (6th Cir. 1974); Currie, *The Three-Judge Court in Constitutional Litigation,* 32 U.Chi.L. Rev. 1 (1964). The import of the district court's decision on convening a three-judge court is that if a three-judge court was required, several courts have held that a district judge on his own does not have the power to order abstention. See *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794; *Greenspan v. Klein,* 550 F.2d 856, 860 (3d Cir. 1977); *Apel v. Murphy,* 526 F.2d 71 (1st Cir. 1975); but see *Steffel v. Thompson,* 415 U.S. 452, 457 n. 7, 94 S.Ct. 1209, 39 L.Ed.2d 505; *Blount v. Mandel,* 400 F.Supp. 1190 (D.Md.1975). Because of our disposition of the case, because plaintiffs did not challenge the district court ruling on this ground and because no injunction would be appropriate on remand (see Part II *infra* ), we need not reach this issue.

6. The state suit sought recovery only for the four named plaintiffs. At about the same time the state suit was filed, the district court accepted the parties' stipulation that the federal action could not be maintained as a class action.

read the statute in that manner, defendants argued that Section 285.01[7] requires that apart from any appeal to University officials a claim must be made to the state legislature before an action can be brought against the state. See, *e. g., Trempeleau County v. State,* 260 Wis. 602, 51 N.W.2d 499 (1952). On May 3, 1974, the Circuit Court accepted defendants' contention and dismissed plaintiffs' state complaint.

Based on that dismissal and a December 21, 1973, opinion by the Wisconsin Supreme Court in *Hancock v. Regents of University of Wisconsin,* 61 Wis.2d 484, 213 N.W.2d 45, plaintiffs filed a motion in the federal court on May 10, 1974, requesting the district judge to vacate his stay order. The motion reasoned first that as a result of the Circuit Court's dismissal plaintiffs no longer had a speedy means of construing Section 36.16 in state court because it would be necessary to appeal the dismissal and then litigate the merits after remand. Next, plaintiffs argued that *Hancock,* which involved a law student's attempt on similar facts to recover his second and third year nonresident tuition, offered sufficient clarification of the meaning of Section 36.16 to make abstention no longer necessary.[8]

That motion was still pending before the district judge almost two years later when plaintiffs' appeal of the dismissal of their state court action was decided by the Wisconsin Supreme Court. In *Lister v. Board of Regents,* 72 Wis.2d 282, 240 N.W.2d 610, the Supreme Court affirmed the dismissal of the complaint, ruling first that the damage claim against the state was barred because of plaintiffs' failures to make claims to the legislature.[9] Next it reasoned that it should not rule on plaintiffs' request for declaratory relief because "the only consequence" of such a ruling would be its effect on the fruitless damage claim. 72 Wis.2d at 308, 240 N.W.2d 610. In refusing to rule on the request for a declaratory judgment, the Court explicitly noted the district court's stay order and admitted that despite the various jurisdictional impediments, it had "inherent authority" to grant declaratory relief. *Id.* at 309, 240 N.W.2d 610. It declined to do so, however, noting that Section 36.16 had been repealed during this litigation in 1973[10] and reasoning that the issue therefore was no longer of sufficient public importance to justify a ruling.

In June 1976, plaintiffs presented the district court with the *Lister* opinion and again moved that the abstention order be vacated. In addition to the arguments previously asserted in their May 10, 1974, motion, plaintiffs emphasized the state court's refusal to construe the statute, the burdensomeness of the legislative claims procedure, and the legislature's rejection of Hancock's claim on similar facts. On July 30, 1976, the district court dismissed the action on its own motion. While accepting that

---

**7.** Section 285.01 provides:

"*Actions against state; bond.* Upon the refusal of the legislature to allow a claim against the state, the claimant may commence an action against the state by service as provided in s. 262.06(3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that he will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case he fails to obtain judgment against the state."

**8.** Hancock's claim for his third year was held not justiciable by the Wisconsin Supreme Court because he had not applied to the appropriate University officials for resident status. 61 Wis.2d at 492, 213 N.W.2d 45. See Part II *infra.* The claim for the second year was rejected because Hancock did not satisfy the four criteria outlined in Section 36.16(3): filing Wis-

consin income tax returns, eligibility for voting, motor vehicle registration, and employment. For reasons not explained to us by either party, the Wisconsin Supreme Court did not discuss whether Hancock had made a claim to the legislature pursuant to Section 285.01.

**9.** The Court listed the amounts sought at $1,551 by Lister, $3,091 by Cooney, $770 by Thiel, and $1,551 by Turley; the total amount at issue was $6,963. 72 Wis.2d at 288, 240 N.W.2d 610.

**10.** The Court stated in a footnote that Section 36.27(2), which replaced Section 36.16, itself was replaced in 1975 by a new Section 36.-27(2), which was similar in format to the original Section 36.16 involved in this action. It concluded that in several key respects, however, "the two sections differ substantially." 72 Wis.2d at 310, n.29, 240 N.W.2d 610.

"the plaintiffs' effort has been in good faith," the court noted that plaintiffs were quickly advised in the state courts that "they had chosen the wrong course within the state system." It further explained that the reasons for abstention were undiminished and therefore concluded that "three years has been sufficient time within which to retain jurisdiction in this court awaiting state adjudication of state issues, and that plaintiffs must accept responsibility for their choice of a course of litigation within the state system." After the district court denied plaintiffs' motion seeking reconsideration and pledging to file a claim with the legislature, plaintiffs filed this appeal from the judgment dismissing the complaint.

The issues raised by the parties on appeal all concern jurisdiction and can be divided into two groups. The first group of issues relates to abstention and involves both whether the district court's initial decision to abstain was correct and whether its dismissal following abstention was justified. Because they are less substantial, we consider second a group of two issues based on the jurisdictional limits set by Article III of the federal Constitution: whether plaintiffs' claims for refunds for semesters for which no application for resident tuition was filed with University officials constitute a "case or controversy" and whether all of plaintiffs' claims have become moot during the long period of litigation. We conclude that all of plaintiffs' damage claims are still properly before the court below and that abstention is no longer appropriate; therefore we reverse the district court's order of January 24, 1972, dismissing part of plaintiffs' amended complaint and its order of July 30, 1976, dismissing the action as a whole and direct the district court to hear the merits of the damage claims.

### I. The Abstention Issues

■ The fundamental question underlying both the decision to dismiss and the

continuing willingness to abstain is whether a federal court that orders abstention to obtain a clarifying interpretation of state law is expected to wait until the federal litigant pursues state non-judicial remedies such as the claim to the legislature involved here if the state courts refuse to clarify the law until those non-judicial remedies are pursued.[11] At least as applied to the facts of this case, our answer is that the district court should not have waited. See *Vickers v. Trainor,* 546 F.2d 739, 744 (7th Cir. 1976).

The first reason why waiting for additional state proceedings was inappropriate is that it is inconsistent with the general concern of federal courts about the delay inherent in a decision to abstain (see *Bellotti v. Baird,* 428 U.S. 132, 150, 96 S.Ct. 2857, 49 L.Ed.2d 844; *England v. Medical Examiners,* 375 U.S. 411, 418, 84 S.Ct. 461, 11 L.Ed.2d 440) and the related concern about the burdensomeness of resort to more than one decision-making process. Cf. *Baggett v. Bullitt,* 377 U.S. 360, 378, 84 S.Ct. 1316, 12 L.Ed.2d 377. The importance of these concerns is underscored by the specific requirement at issue here, which as plaintiffs contend and defendants do not deny, requires first the submission of the claim to a Claims Board, a process consuming about four months, and then the introduction of a bill into the legislature followed by the normal time-consuming procedures in committee and in both houses of the legislature. Clearly the steps that the district court impliedly required of the plaintiffs here are not the "easy and ample means" available in *Pullman,* 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971, when the doctrine of abstention was conceived.

This case was brought under 42 U.S.C. § 1983. Waiting for non-judicial proceedings also is inconsistent with the related federal policy of not requiring exhaustion of state non-judicial remedies in such cases. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647; *Ellis v.*

---

11. Because of our disposition of this case, it is unnecessary to decide whether the fact that plaintiffs pursued state remedies in good faith

is sufficient by itself to avoid a dismissal in this context.

*Dyson,* 421 U.S. 426, 432–433, 95 S.Ct. 1691, 44 L.Ed.2d 274; but see *Runyon v. McCrary,* 427 U.S. 160, 186 n*, 96 S.Ct. 2586, 49 L.Ed.2d 415 (Powell, J., concurring).[12] To require resort to the Claims Board and legislature before a federal court could rule on a constitutional claim would render meaningless the policy of not requiring exhaustion in any case in which a state's law is unclear and that state has an applicable statute similar to Wisconsin's Section 285.01. Cf. *Brown v. Bronstein,* 389 F.Supp. 1328, 1333 (S.D.N.Y.1975).

Third, to the extent that abstention decisions consider the friction created by federal interventions into subjects of significant state concern (see *Vickers v. Trainor,* 546 F.2d 739, 746 (7th Cir. 1976); Hart and Wechsler's *The Federal Courts and the Federal System* 944 (2d ed. 1973)), that consideration is minimized in this case. The state's Supreme Court had an opportunity to rule on the issues involved but, despite its awareness that the district judge was awaiting its construction of the statute, held that the case was not important enough for it to use its inherent authority to decide the issue in the absence of proper procedural prerequisites. This admitted unimportance of the issue to the state judiciary rebuts defendants' contention and the district court's conclusion that "the force of the reasons for awaiting state judicial action * * * is undiminished." A. 40. Cf. *Hull v. Petrillo,* 439 F.2d 1184, 1188 (2d Cir. 1971). In fact, even if the state court had not admitted that it viewed the issue as unimportant, its deliberate avoidance of the issue due to jurisprudential concerns could be sufficient to overcome any comity considerations and justify the reassertion of federal jurisdiction. *414 Theater Corp. v. Murphy,* 499 F.2d 1155, 1157 (2d Cir. 1974).

Although these three considerations present a powerful case for establishing a general rule against continuing to abstain after a state court requires resort to potentially time-consuming non-judicial proceedings before it clarifies the law, we need not go so far here. Even assuming that significant problems of delay, the related federal policy of non-exhaustion and the absence of a substantial comity concern must be balanced against the extent of the ambiguity in state law and the resulting need for clarification (see IA *Moore's Federal Practice* ¶ 0.203[1] at 2115–2116), we note as a fourth consideration here the fact that the district judge's concerns about the ambiguities in the state law seem relatively unpersuasive.

The district court's July 11, 1973, opinion offered only briefly two possible constructions of Section 36.16 that might alter substantially the constitutional issues presented.[13] First, it suggested that the last sentence in Section 36.16(3) (see note 1 *supra*) "might be construed by a state court to provide that a student from another state who is in Wisconsin principally to obtain an education cannot be classified as a bona fide resident solely on the basis of his attendance at an educational institution in Wisconsin" (Mem. op. 9–10). Apparently this suggestion means that the state courts might read the statute to exclude automatically from resident classification any student who came to Wisconsin principally to obtain an education. Put in context, however, the part of the sentence concerned with the evaluation of resident status of students in the state "principally to obtain an education" is related to and modified by the phrase "by virtue of attendance at educational institutions." Thus the more reasonable reading of that sentence, which is part of a subsection devoted to listing the

---

**12.** Even those commentators who have objected to the proposition that exhaustion is not required in Section 1983 cases probably would not require exhaustion here in light of the burdensome legislative procedure involved and the failure to provide interim relief. See, *e. g.,* Note, *Exhaustion of State Administrative Remedies in Section 1983 Cases,* 41 U.Chi.L.Rev. 537 (1974).

**13.** Defendants compounded that omission by not offering any explanations of how the state courts could have clarified the statute. Wisconsin has no procedure whereby important state law questions can be certified by a federal court to the Wisconsin Supreme Court. Cf. *Elkins v. Moreno,* —— U.S. ——, ——, 98 S.Ct. 1338, 55 L.Ed.2d 614.

factors that should be considered in determining bona fide residence, is that attendance at an educational institution is not to be a factor in making out a case as a bona fide resident. Even assuming the correctness of the district court's reading, it could be argued that the plaintiffs' claims would not be altered substantially because the. court's reading simply places more reliance on the phrase plaintiffs challenge as vague, "principally to obtain an education."

Alternatively, the district court suggested that the broad language of Section 36.16(3) might be construed to require that males who marry bona fide female residents are entitled to resident status as are females who marry bona fide male residents. In the absence of further explanation by the district court or the State of Wisconsin in its briefs and argument, we do not find any such broad language in Section 36.16(3), which we read as listing factors to determine bona fide status in the first sentence (see *Hancock v. Regents of University of Wisconsin,* 61 Wis.2d 484, 213 N.W.2d 45 (1973)) and excluding a factor in the second sentence. In any event, to read that Section as including males and thus covering all students would render unnecessary Section 36.16(1)(ae) [14] and thus violate fundamental principles of statutory construction. See *Johnson v. State,* 76 Wis.2d 672, 676, 251 N.W.2d 834 (1977).

The district court's decision to dismiss the case recognized that plaintiffs acted in good faith and apparently relied solely on the fact that "plaintiffs must accept responsibility for their choice of a course of litigation within the state system." Based on the above reasons why on these facts plaintiffs did not need to pursue the non-judicial remedies available to them, we disagree that plaintiffs made the wrong choice and therefore see no justification for the dismissal.[15] For the same reasons, rather than dismissing the case, at least after the *Lister* opinion by the Wisconsin Supreme Court the district judge should have granted plaintiffs' motion to vacate the stay and taken up the merits of the case, despite his identification of some unclear issues of state law.

In holding not only that the dismissal was unwarranted but also that the district court must now decide this case even assuming the existence of some ambiguity, our decision is consistent with analogous cases and principles. As a general matter, for example, the Supreme Court recently has recognized that in appropriate circumstances harms such as delay can outweigh the need for clarification and dictate that abstention be avoided. See *Mayor v. Educational Equality League,* 415 U.S. 605, 628, 94 S.Ct. 1323, 39 L.Ed.2d 630; *Bellotti v. Baird,* 428 U.S. 132, 150, 96 S.Ct. 2857, 49 L.Ed.2d 844; see also *Herald Co. v. McNeal,* 553 F.2d 1125, 1130 (8th Cir. 1977); but see *Chicago v. Fieldcrest Dairies,* 316 U.S. 168, 172–173, 62 S.Ct. 986, 86 L.Ed. 1355.

More specifically, although this case appears to be one of first impression, an anal-

---

14. Although not identified as unclear by the defendants or the district court and apparently believed to be clear by the district court, there may be some ambiguity in Section 36.16(1)(ae) itself. Plaintiffs' argument based on that Section seems to assume that the word "marries" means "is married to;" if the Section is limited only to those whose spouses were bona fide residents at the time of their marriage, then plaintiffs may not have standing to challenge the alleged sex discrimination because they would not qualify for the statute's benefits even if the statute were extended to males. Compare *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514.

15. While the Supreme Court has advised that retaining jurisdiction pending state court clari-

fication is the "proper course" (*American Trial Lawyers Association v. New Jersey Supreme Court,* 409 U.S. 467, 469, 93 S.Ct. 627, 34 L.Ed.2d 651), it is true that under some circumstances dismissal without prejudice when abstention is ordered may be appropriate. See *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32. Even if it could be argued that the Supreme Court's general advice can be ignored on the facts of this case, the possibility of dismissal is of no help to defendants here because, apart from potential statute of limitation problems, the district court's dismissal here must be assumed to be with prejudice. See Federal Rule of Civil Procedure 41(b).

ogous problem in the interrelationship between the Fifth Circuit and the Texas state courts has produced a similar result. After the Fifth Circuit *en banc* ordered abstention in *United Services Life Ins. Co. v. Delaney,* 328 F.2d 483 (5th Cir. 1964), certiorari denied, 377 U.S. 935, 84 S.Ct. 1335, 12 L.Ed.2d 298, the Texas Supreme Court held that when the federal district court retained jurisdiction of the case pending state court clarification, as it did in *Delaney,* litigation aimed at clarifying the law was no more than a request for an advisory opinion so that the state court must dismiss the case for lack of jurisdiction without clarifying the law. While the Fifth Circuit now avoids this problem by directing district courts in the first instance not to retain jurisdiction in appropriate cases while awaiting clarification (see *Barrett v. Atlantic Richfield Co.,* 444 F.2d 38 (5th Cir. 1971); note 15 *supra* ), it is worth noting that after Texas' refusal to clarify the law in *Delaney* the Fifth Circuit *en banc* ruled on the merits of the dispute without waiting to remand to the district court with directions to dismiss in order to allow state court clarification. 358 F.2d 714 (5th Cir. 1966), certiorari denied, 385 U.S. 846, 87 S.Ct. 39, 17 L.Ed.2d 77.[16] Its apparent decision that the long delay dictated an immediate ruling on the merits despite the availability of state court clarification is particularly persuasive here because it was made in the absence of a confession by the state that the issues involved were unimportant and in the absence of the applicability of the policy against requiring exhaustion in Section 1983 cases. Consistent with the Fifth Circuit's rationale and in light of the reasons why resort to state non-judicial remedies should not have been required on these facts, the district court on remand should consider the merits of plaintiffs' claims and should do so in an expeditious manner.

## II. Article III Issues

Taken together, defendants' arguments based on lack of jurisdiction potentially have relevance as defenses when the merits of the case are heard but have little or nothing to do with the power of this Court or the district court to hear the case. Both the claim that no case or controversy exists as to some semesters and the claim that the case is now moot are without merit and therefore do not alter our decision to send the case to the district court with directions to hear the merits.

### A. Case or Controversy

■ Defendants' motion to dismiss plaintiffs' claims for semesters in which reclassification by University officials was not sought was accepted without explanation by the district court on the ground that "no genuine controversy exists." Defendants support that ruling by citing the Wisconsin Supreme Court's decision in *Hancock,* in which that court held a similar case nonjusticiable because "the plaintiff never requested a change in status * * * and, therefore, the defendants had no opportunity to deny the requested change and it follows that no controversy existed with respect to that year." 61 Wis.2d at 495, 213 N.W.2d at 50.

Apparently this argument has two dimensions. On one level, the level chosen by defendants at oral argument, the argument is that even though the parties may now have adverse interests because plaintiffs seek money from defendants, there was no adverse interest at the time of the tuition

---

**16.** Apparently neither the Fifth Circuit nor any other circuit has faced the situation in which a state court subsequent to federal equitable abstention has refused jurisdiction on the ground that a litigant's reservation of his federal claims under *England v. Louisiana School Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440, similarly requires an advisory opinion. Consistent with the reasoning of this opinion, Professor Moore has suggested that "if a state court will not rule on the state issue unless the federal claim is also presented for binding determination, abstention should not be ordered." 1A *Moore's Federal Practice* ¶ 0.203[1]; *England, supra,* at 422 n. 12, 84 S.Ct. 461. But cf. *28 East Jackson Enterprises Inc. v. Cullerton,* 551 F.2d 1093, 1096 (7th Cir. 1977), certiorari denied, 434 U.S. 835, 98 S.Ct. 123, 54 L.Ed.2d 96 (*England* reservation under 28 U.S.C. § 1341).

payment since no request was made or refused at the start of some semesters. Cf. 61 Wis.2d at 492, 213 N.W.2d 45, Br. 8. This argument seems to assume that the time at which adverseness is determined is the time of the event that forms the basis of the suit and that in order to be adverse the parties must recognize their adverse interests at that time. To state this argument is to highlight its inconsistency with the accepted understanding that Article III of the federal Constitution is concerned with whether the parties have a "present conflict of interest." 6A *Moore's Federal Practice* ¶ 57.11 n. 103. Not only does requiring explicit assertions of conflicting interests at a certain time before suit bear little relation to the policies behind requiring a case or controversy—"to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution" (*Id.* at 57–103)—but also if applied literally would exclude from the courts a significant group of cases whose justiciability has never been doubted: for example, suits by purchasers of securities when they later determine they were deceived (*e. g.*, 15 U.S.C. § 78j(b)) and suits by former employees who later consider their discharge to have been discriminatory (*e. g.*, 42 U.S.C. § 2000e).

A different and somewhat more plausible form of the argument is that the dispute is not ripe for judicial decision because, as in other instances in which a plaintiff's case has come to court before being disposed of by an administrative agency (see, *e. g.*, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681), the position of the defendants and the rights of the plaintiff are not yet in fixed, final form. Cf. 61 Wis.2d at 492, 213 N.W.2d 45. Although lack of ripeness can be a basis for non-justiciability, a distinction must be drawn between those cases in which a plaintiff brings a suit during a period in which state non-judicial remedies are still available and those cases in which a suit is brought when state remedies are unavailable. It is in the former set of cases that courts have held that a controversy may not be ripe for judicial resolution. See, *e. g.*, *Citizens Communications Center v. Federal Communications Commission*, 145 U.S.App. D.C. 32, 447 F.2d 1201 (1971). Even if plaintiffs are wrong in arguing that a requirement that such remedies be pursued is merely an indirect method of mandating exhaustion in Section 1983 cases and therefore contradicts the established policy discussed *supra*,[17] the former set of cases is inapplicable because as this statute has been interpreted the application to University officials was to be made at the beginning of the semester for which resident status is sought. See 61 Wis.2d at 489, 213 N.W.2d 45. The state does not contend that the administrative process is still open to the plaintiffs. Thus plaintiffs' claims fall into the latter set of cases. When the non-judicial remedies have not been and can no longer be pursued, the state may, depending on the action, have some type of defense but the ripeness doctrine is inapplicable because the denial is complete and the issues are clearly and firmly presented for review. See *Gardner v. Toilet Goods Association*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704.

Although plaintiffs' failure to request reclassification for some semesters therefore does not render this case non-justiciable, it may be considered on remand, at least if the good faith defense is applicable, because defendants' lack of knowledge of plaintiffs'

17. Contrary to plaintiffs' lengthy argument, it should be noted that some courts in Section 1983 cases have applied the ripeness doctrine to preclude jurisdiction based on failure to await a clear state administrative determination. See, *e. g.*, *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976). While these cases do not discuss the contrary policy against requiring exhaustion in Section 1983 cases, the explanation must be that such a Congressional policy cannot expand the jurisdiction of federal courts to cover cases not sufficiently ripe as a constitutional matter. To the extent ripeness is a prudential, non-constitutional doctrine, however, it would not be sufficient to justify requiring recourse to state non-judicial proceedings in violation of Congressional policy. See generally C. Wright, *Federal Courts* § 13 (3d ed. 1976).

claims and their possible inability under state law to act on those claims could be relevant to good faith or perhaps another defense. As a matter of Article III jurisdiction, however, defendants' argument may reflect how the Wisconsin courts interpret the judicial powers under that state's constitution but it is not persuasive as a limit on the constitutional powers of federal courts.

#### B. *Mootness*

■ As to all of the counts, defendants argue that even assuming they once presented a justiciable case they no longer do so because the case has become moot. Based on the facts that the statute has been replaced and the plaintiffs are no longer students at the University, plaintiffs do not vigorously contest the mootness of their claims for injunctive and declaratory relief (see, *e. g., Kerrigan v. Boucher,* 450 F.2d 487 (2d Cir. 1971)), but do insist that their damage claims are not moot. According to the defendants, those claims are moot because the reimbursement sought is "incidental" to the mooted declaratory and injunctive relief and because "it is a claim prohibited by the Eleventh Amendment to the United States Constitution" (Supp. Br. 6).

The argument that the claims for damages or reimbursement are "incidental" misconceives the type of damages requested in cases that have been declared moot on this ground and the reasons for declaring cases moot on this ground. While drawing a firm line between incidental damages and damages necessary to sustain a controversy is not necessary here because of the significant amount of damages requested, it is important to note that none of the cases cited by defendants involved more than nominal damages, such as one dollar. See *e. g., Kerrigan v. Boucher,* 450 F.2d 487 (2d Cir. 1971); *Anthony v. Massachusetts,* 415 F.Supp. 485 (D.Mass.1976), certified to state court on another issue, 429 U.S. 66. The

damages involved here have been a hotly contested issue throughout the litigation [18] and the almost $7,000 requested reinforces the conclusion that the damage claims are not "incidental."

Whether the $7,000 recovery is precluded by the Eleventh Amendment is an issue that should be considered by the district court on remand, but it does not affect the jurisdiction of this Court or the district court.[19] A state's immunity is a defense that must be pleaded and proven by a defendant (see *Illinois Central Railroad Co. v. Adams,* 180 U.S. 28, 21 S.Ct. 251, 45 L.Ed. 410); the mere assertion of such a potential defense cannot render a case moot.

■ No concluding statement highlighting the unfortunate and apparently avoidable delays in the adjudication of plaintiffs' federal claims is necessary because the facts of this case, particularly the six and one-half years of proceedings in two sets of courts without any judge considering the merits of the claims, present a powerful lesson of the lengthy delays that abstention can bring. If this case serves to remind the courts that abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" (*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483), perhaps the judicial energy expended served a useful purpose. For the plaintiffs, who might have reduced the delay by seeking an earlier appeal, the only relief this Court now can give is to reverse and remand for proceedings consistent with this opinion.

---

**18.** In its January 24, 1972, order, for example, the district court noted that "the essence of this dispute appears to be money."

**19.** We do not decide which defendants, if any, can successfully urge the bar of the Eleventh Amendment.